## Teetsel v. Nationwide Mutual Insurance Company

*S. John Cottone*, for plaintiffs.

*Hugh J. McMenamin*, for defendant.

Before Hoban, P. J., Robinson and Conaboy, JJ.

ROBINSON, J., April 19, 1965.—This matter is before us on defendant's exceptions to a decision of the court after a trial without a jury.

Plaintiffs, administrators of the estate of Ronald G. Teetsel, deceased, brought this action in assumpsit to recover on a "Family Compensation" clause in a "Century" automobile insurance policy issued by de-

fendant Nationwide Mutual Insurance Company to George Teetsel, father of the deceased, on September 6, 1962.

The "Family Compensation" coverage extended death benefits to relatives while residents of the same household of the policyholder who suffered death by being struck by a motor vehicle. The answer admitted issuance of the policy but denied that on July 15, 1963, Ronald G. Teetsel was a resident of the household of his father, George Teetsel. This is the sole point in issue. The case was tried by agreement without a jury and the trial judge found generally for plaintiffs in the amount of $5,000 with interest from August 28, 1963. Defendant excepted averring that the decision is not supported by and is against the weight of the evidence.

A general finding for a party by a trial judge sitting without a jury has the force and effect of a verdict of a jury and in support of the judgment entered by the court thereon, plaintiff is entitled to the benefit of the most favorable inferences deducible from the evidence. See Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company, 385 Pa. 394; Fisher v. Congregation B'nai Yitzhok, 177 Pa. Superior Ct. 359; Jann v. Linton's Lunch, 150 Pa. Superior Ct. 653. As defendant offered no evidence it can prevail on the exceptions only if plaintiffs' proof together with the inferences arising therefrom is insufficient to establish the claim.

The facts are undisputed. Defendant insurance company issued its policy to George Teetsel, deceased's father, which insured among other things the risk of bodily injury or death by being struck with a land motor vehicle and covered the policyholder, his spouse, and the relatives of either while residents of the same household. George Teetsel resided with his family in Washington Township in Wyoming County. Ronald G.

Teetsel was George Teetsel's son who at the time of his death was 23. He was unmarried. Ronald Teetsel was a farmhand employed by one Guy Walters on a farm in Susquehanna County which was located about two miles from the Teetsel property. Ronald's duties required him to stay overnight at the Walters' farm for three nights each week. The rest of the time he lived at home with his parents and brothers. On occasions when Ronald stayed overnight at the Walters' farm he often returned home for some of his meals. Otherwise Ronald ate, slept and lived with his family. He occupied a bedroom with his brothers and kept his clothing and possessions there; his mother laundered his clothes. He was a registered voter from his father's home in Wyoming County. Sometime in the first part of June, 1963, Ronald left the area without leaving word of his departure or why or where he was going. He did not take his clothes or other possessions with him and left all of his belongings at home. On July 5, 1963, Ronald was struck and killed by an automobile in Sparta, Illinois. At that time his parents were visiting in Canada.

The pivotal question is whether Ronald G. Teetsel was a resident of his father's household at the time of his death within the meaning of the policy. It is well settled that an insurance policy will be construed against the insurer who prepared it: MacDonald v. Metropolitan Life Insurance Co., 304 Pa. 213; West v. MacMillan, 301 Pa. 344. Doubts as to the meaning of a policy will be resolved in favor of the insured: Beley v. Pennsylvania Mutual Life Insurance Co., 373 Pa. 231. And a policy will be construed in order not to defeat the indemnity which the policy was designed to afford: Armon v. Aetna Casualty and Surety Co., 369 Pa. 465. Words also will be construed in their plain, natural and ordinary sense. See Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Co., supra.

Undoubtedly Ronald G. Teetsel, prior to his departure in June, 1963, was a relative residing in the household of his father within the terms of the policy. While the word "household" has been before the courts in various kinds of litigation the definitions have no great divergence. Household, as used in insurance policies extending benefits to members thereof, has been uniformly defined to denote members of a household collectively; a domestic establishment synonymous with the word "family"; or a body of persons living in one house under one head. "Household" has broader meaning than "family" since the latter conveys the notion of relationship by blood, marriage or otherwise. A household is comprised of a group living together under a head so as to constitute a small social unit. It may include persons not members of a family but all who dwell together under a common head as a household are embraced by the word family. See Hoff v. Hoff, 132 Pa. Superior Ct. 431; Brovdy v. Jones & Laughlin Steel Corporation, 145 Pa. Superior Ct. 602; Kransky v. Glen Alden Coal Company, 158 Pa. Superior Ct. 544; Bair v. Robinson, 108 Pa. 247. Such is the meaning of the term household as used in the policy in suit. Cf. 1 ALR 2d 561; 50 ALR 2d 120; 78 ALR 2d 1404; 19 Words and Phrases 698; 37 Words and Phrases 453. As universally defined this 23-year-old unmarried farm hand who lived with, ate with, slept with his family and kept all of his clothes and belongings in the common home was a resident member of his father's household prior to his departure in June, 1963. That his work required him to spend several nights a week away from his home would have no effect on the relationship.

The case turns upon Ronald's departure. It is important to note that there is no evidence as to the circumstances of his leaving. Ronald Teetsel departed without taking any of his clothes, personal effects or

belongings and without word to his family or employer. His intentions, purpose, reason or motive in leaving cannot be determined. There is nothing that remotely suggests that he intended to make his absence permanent.

If anything is well settled in this field of litigation it is that the mere temporary absence or departure of a member from the family home does not affect the household relationship. The law does not require that a member be physically in the household in order to be a resident thereof. The status does not change with arrival and departure.of the members. The social unit comprising the household is intact except for permanent change.

In Travelers Indemnity Company v. Mattox, 345 S. W. 2d 290 (Tex. Civ. App.), a 17-year-old boy, in trouble, went to live with his brother in another county. He carried only his work clothes and left his best clothing, shoes, rifle, shotgun and belongings with his father. His absence was held to be temporary in nature and his residency in his father's household unaffected. In Cal-Farm Insurance Co. v. Boisseranc, 151 Cal. App. 2d 775, 312 P 2d 401, a child of divorced parents who spent three-fourths of his time with his father and who visited with his mother for a week before the occurrence of an accident covered by the insurance in suit was held to be a resident of his father's household under the terms of the policy. In Senn v. State Farm Mutual Automobile Insurance Co., 287 S. W. 2d 439 (Ky.), an insured residing in his parent's home as a member of the household was held not to have lost status as a resident thereof by reason of his military service. In Mississippi Benefit Association v. Majure, 29 S. 2d 110 (Miss.), a member of a family was held to be residing therewith, notwithstanding that he was drafted into the United States army and died in combat on foreign shores.

The evidence must be taken most favorably to the decision-winner and deceased remained a resident of his father's household despite the unexplained departure from the homestead. A temporary absence will not alter the relationship and there is nothing to indicate a permanent leaving. We think that the circumstances of deceased's departure require an inference that his absence from the policyholder's household was but temporary.

Plaintiffs are entitled to the benefit of such an inference since one does not ordinarily leave an abode and all of his worldly possessions with the intention never to return without reason.

In order to establish that a person is no longer a resident member of a household it must appear either that he left the same intending to obtain another place of abode or that his departure from the household was with the intention not to return as a permanent member thereof. This defendant utterly failed to establish.

Now April 19, 1965, defendant's exceptions to the decision of the court are dismissed. The prothonotary is directed to enter judgment on payment of the costs. Exception is allowed defendant.