RICHARD GRIFFITH ET AL. *v.* SECURITY INSURANCE COMPANY OF HARTFORD

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

Argued October 3, 1974—decision released January 14, 1975

*Joseph F. Skelley, Jr.,* with whom, on the brief, was *Joel J. Rottner,* for the appellant (defendant).

*Thomas C. Marshall,* with whom was *Brian C. Carey,* for the appellees (plaintiffs).

HOUSE, C. J. This case arose from an accident in which the fifteen-year-old plaintiff, Richard Griffith, son of the plaintiffs Granville and Violet Griffith, was injured. The accident involved his bicycle and an uninsured automobile. At the time of the accident, there was in effect an automobile insurance policy issued by the defendant to Granville Griffith. The plaintiffs applied to the Superior Court for an order directing the defendant company to proceed with arbitration in accordance with the provisions of § 52-410 of the General Statutes and the decision of this court in *Frager* v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 231 A.2d 531. In their application, the plaintiffs alleged that by the

terms of the insurance policy Richard was an insured and legally entitled to recover damages sustained as the result of the operation of an uninsured motor vehicle. By a more specific statement filed after the court had issued an order to the defendant to appear and show cause why the application should not be granted, the plaintiffs pleaded that at the time of the accident "the home address of the plaintiffs, Richard Griffith and Violet Griffith, was 93 Whiting Street, New Britain. The home address of the plaintiff, Granville Griffith, was primarily 450 Main Street, New Britain, and secondarily 93 Whiting Street, New Britain." The defendant company denied the allegation that Richard was an insured under the provisions of the policy issued to his father. By way of special defense, it pleaded that at all times covered by the complaint Granville Griffith resided at 450 Main Street, New Britain; that both Violet Griffith and Richard Griffith resided at 93 Whiting Street, New Britain; and that, since the plaintiff Granville and the plaintiffs Violet and Richard were not residents of the same household, the coverage extended under the subject insurance policy did not extend to the latter two plaintiffs. After a hearing, the court rendered judgment ordering the defendant to arbitrate the questions covered, under the arbitration clause of part IV of the policy issued to Granville Griffith.

The decisive issue before the trial court was whether Richard was an insured under the terms of the policy issued to his father. Part IV of the policy concerning "Protection Against Uninsured Motorists" provided for protection for "the insured or his legal representative." Under "Definitions" Part IV provided: "The definitions under Part I, except the definition of 'insured,' apply to Part IV

and under Part IV: 'insured' means: (a) the named insured and any relative." Part I of the policy provided: " 'relative' means a relative of the named insured who is a resident of the same household." Hence, the basic question at issue was whether the father, Granville Griffith, and his son, Richard, were residents of the same household so that Richard was an insured under the terms of the policy. The court concluded that they were residents of the same household, that Richard was an insured under the terms of the policy, and that the plaintiffs had the right to compel the defendant to arbitrate since uninsured motorists coverage was available. It rendered judgment accordingly, and it is from this judgment that the defendant has appealed.

On its appeal the defendant assigned as error the conclusions of the court to which we have just referred, claiming that the facts set forth in the finding do not support them. It has further assigned error in three paragraphs of the court's finding as facts found without evidence and in refusing to find material facts as set forth in eleven paragraphs of the defendant's draft finding which facts the defendant claims were undisputed.

Before discussing the assignments of error, it is pertinent to refer again to the general rules governing the interpretation of written contracts, including insurance policies. "When the language of a policy is plain and unambiguous the terms must be accorded their natural and ordinary meaning. *LaBonte* v. *Federal Mutual Ins. Co.,* 159 Conn. 252, 256, 268 A.2d 663; *Lyon* v. *Aetna Casualty & Surety Co.,* 140 Conn. 304, 99 A.2d 141." *DeRubbo* v. *Aetna Ins. Co.,* 161 Conn. 388, 392, 288 A.2d 430. "A court

will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings. *A. M. Larson Co.* v. *Lawlor Ins. Agency, Inc.,* . . . [153 Conn. 618, 622, 220 A.2d 32]; *Downs* v. *National Casualty Co.,* . . . [146 Conn. 490, 494, 152 A.2d 316]." *Marcolini* v. *Allstate Ins. Co.,* 160 Conn. 280, 284, 278 A.2d 796. No persuasive argument or legal authority has been submitted for the proposition that the controlling words of the policy, "resident of the same household," are ambiguous. The Supreme Courts of Hawaii and Minnesota, in considering the same provisions in insurance policies, have concluded that the words are not ambiguous, and we agree with their conclusions. *Mun Quon Kok* v. *Pacific Ins. Co.,* 51 Haw. 470, 462 P.2d 909; *Smitke* v. *Travelers Indemnity Co.,* 264 Minn. 212, 118 N.W.2d 217.

The common and ordinary meaning of "household" as defined in Webster's Third New International Dictionary is: "those who dwell under the same roof and compose a family: a domestic establishment; specif: a social unit comprised of those living together in the same dwelling place." To the same effect, see 41 C.J.S. 367; see also *Rathbun* v. *Aetna Casualty & Surety Co.,* 144 Conn. 165, 169, 128 A.2d 327.

As we have noted, the defendant has attacked the court's conclusion that the plaintiffs Granville and Richard were residents of the same household. "The court's conclusions are to be tested by the finding. *Brockett* v. *Jensen,* 154 Conn. 328, 331, 225 A.2d 190. The conclusions reached by the court must stand

unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case. *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 79, 239 A.2d 500; *Craig* v. *Dunleavy,* 154 Conn. 100, 105, 221 A.2d 855." *Barnini* v. *Sun Oil Co.,* 161 Conn. 59, 63, 283 A.2d 217.

It is not questioned that Granville and Violet Griffith had been divorced for four years at the time of the accident in question. She lived with their son Richard and their other sons and daughters at 93 Whiting Street, and Granville lived at 450 Main Street about one-half mile away. The divorce did not significantly change the relationship between Granville and the children; he supported them, saw them frequently, took them on trips and was visited by them, including Richard, at his Main Street address. He frequently went to 93 Whiting Street, often stayed overnight and baby-sat there. He also kept clothes and a razor at 93 Whiting Street and had meals with his children three to seven times a week. All of these uncontested findings clearly indicate a close paternal relationship between Granville Griffith and his children but, in view of the fact that it is also undisputed that he lived at 450 Main Street, one-half mile away from 93 Whiting Street, they do not support an additional finding that he lived at 93 Whiting Street so that he and Richard were members of the same household, and that finding has been attacked.

Several paragraphs of the defendant's draft finding recited facts relevant to Granville's maintenance of his own separate apartment and household on Main Street from which he frequently visited

his children at 93 Whiting Street. The court refused to find these facts and this refusal has been assigned as error. This court may correct a finding which fails to include admitted or undisputed facts, having due regard to the principle that the trier of fact is the judge of the credibility of witnesses. *Salvatore* v. *Milicki,* 163 Conn. 275, 277, 303 A.2d 734; *Solari* v. *Seperak,* 154 Conn. 179, 182, 224 A.2d 529; Practice Book § 627. We may also consult the court's memorandum of decision to understand better the basis of its decision and to interpret its finding. *Bridgeport Pipe Engineering Co.* v. *DeMatteo Construction Co.,* 159 Conn. 242, 247, 268 A.2d 391; *Craig* v. *Dunleavy,* 154 Conn. 100, 221 A.2d 855. In examining the court's memorandum of decision in connection with its refusal to find paragraphs of the draft finding which recite relevant facts taken directly from that memorandum, we find a strange inconsistency. For example, the memorandum of decision states: "The father voted from Main Street and registered his automobile at that address." Nevertheless, the court refused to find as requested by the defendant that "[t]he Plaintiff Granville Griffith's automobile registration listed his home address as Main Street" and refused to find that "[t]he Plaintiff Granville Griffith's residence as a voter was Main Street." Similarly, relevant to the question of whether Granville and Richard were residents of the same household, the court noted in its memorandum of decision that "on the date of their son's injury the wife lived with the plaintiff-minor and four other children at the . . . [Whiting] Street address and the father at the Main Street address," yet it refused to find that "[t]he Plaintiff Richard Griffith lived at Whiting Street." Furthermore, not only did the

plaintiffs not dispute the facts stated in the defendant's draft findings in question but in their testimony they admitted them, as disclosed by the evidence printed in the appendix to the defendant's brief. The plaintiff Granville testified that although he would "visit" the household of his children and former wife three or four times a week, he kept all of his personal belongings, including his television and radio sets, at Main Street. He also testified that he kept his personal and financial business records there, received most of his mail there and used that address on the registration of his car, for voting purposes and for paying income tax, and claimed that "Main Street is where he lived." The plaintiff Richard testified that he was living with his mother at 93 Whiting Street and his father lived at 450 Main Street. The plaintiff Violet Griffith testified that when her former husband came to Whiting Street "he was visiting his family." The plaintiffs' brief had no appendix containing evidence. " 'It is the duty of both parties to print all material evidence in the appendices to their briefs.' *Pass* v. *Pass,* 152 Conn. 508, 511, 208 A.2d 753; *Cushing* v. *Salmon,* 148 Conn. 631, 632, 173 A.2d 543; *State* v. *Pundy,* 147 Conn. 7, 9, 156 A.2d 193." *Solari* v. *Seperak,* supra, 183. We find merit to the defendant's assignment of error in the refusal of the court to find these facts set out in the defendant's draft finding, all of which were admitted by the plaintiffs in their own testimony. The defendant is entitled to have these facts added to the finding.

The finding, with the addition of those facts to it, clearly does not support the court's conclusion that the plaintiffs Granville Griffith and Richard Griffith were residents of the same household and,

since in the absence of that circumstance the plaintiff Richard was not an insured under the provisions of the insurance policy issued to his father, the court erred in concluding that Richard was an insured under the terms of that policy.

Over the years, many courts have been faced with the similar problem of deciding whether on a given state of facts individual persons are members of a particular household and, in each case, the decision has depended upon the particular factual circumstances involved. These factual circumstances are so varied that the decisions themselves are of little precedential value. For example, the facts in the case most heavily relied upon by the plaintiffs, *Mazzilli* v. *Acc. & Cas. Ins. Co. of Winterthur*, 35 N.J. 1, 170 A.2d 800, differ in significant detail from the present case. That case involved a policy issued to a Mr. Selger which was "curiously hybrid in nature." Id., 6. Of the policy, the New Jersey Supreme Court observed that "the insurer undertook to blend into one instrument a general public liability premises policy and a comprehensive personal liability policy." Ibid. "Premises" were defined as "all premises where the Named Insured or his spouse maintains a residence." Ibid. The insured premises consisted of a single 2.46-acre tract owned by Mr. Selger on which were located both a house and a bungalow situated 150 feet apart. No physical barrier interfered with free movement about the tract. Id., 3. Mr. and Mrs. Selger were married. She lived in the bungalow with their son and he lived in the house, and, pursuant to a pendente lite court order issued in a separate maintenance action, he provided the bungalow for his wife and son. There was no custody order entered regarding the son. Id., 4. The plaintiff secured a verdict against

Mrs. Selger because of her negligence in leaving a gun accessible to the Selgers' minor son who wounded the plaintiff. The court concluded; id., 19; that the trial court had reasonably found Mrs. Selger to be a resident of her husband's household within the scope of the defendant's contract of insurance, noting that "of primary significance was his feeling that 'this (meaning the premises) was all one place where the entire family was living' and being maintained by him." Id., 15. Obvious differences in the fact pattern of that case and the case before us include the facts that in our case the couple were not husband and wife but had been divorced and living apart for four years, by court order custody of the son Richard had been awarded to the former wife, and the son Richard lived with her at her residence which was on a different street and one-half mile away from where his father lived in his own apartment. Unlike Mr. Selger in the New Jersey case, Granville, although he paid support for his children, did not provide the home on Whiting Street for them where they lived with their mother. Such differing fact patterns as these render cases from other jurisdictions of little value as precedents.

There is error and the case is remanded with direction to render judgment denying the plaintiffs' application for an order directing the defendant to proceed with arbitration.

In this opinion SHAPIRO, LOISELLE and MAC-DONALD, Js., concurred.

BOGDANSKI, J. (dissenting). The majority opinion apparently holds that the term "household" is unambiguous and means "those who dwell under the

same roof." [1] I cannot agree. That interpretation may have adverse consequences for a significant segment of our population. Recent statistics show that for every three marriages occurring in Connecticut today, one marriage is ending in divorce. United States Bureau of the Census, "Statistical Abstract of the United States: 1974" (95th Ed.), p. 67. To follow the majority's narrow definition of household without regard for varying factual situations will strip many such broken families of their insurance coverage.

When the terms of an insurance policy are plain and unambiguous, they are to be accorded their natural and ordinary meaning. *LaBonte* v. *Federal Mutual Ins. Co.*, 159 Conn. 252, 256, 268 A.2d 663; *Raffel* v. *Travelers Indemnity Co.*, 141 Conn. 389, 392, 106 A.2d 716. When, however, the words of an insurance contract are, without violence, susceptible of two or more interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. *Raffel* v. *Travelers Indemnity Co.*, supra; *King* v. *Travelers Ins. Co.*, 123 Conn. 1, 4, 192 A. 311; *Dickinson* v. *Maryland Casualty Co.*, 101 Conn. 369, 379, 125 A. 866. Courts follow that rule because the insurance company's attorneys, officers, or agents prepare the policy and it is their language that must be interpreted. *Scranton* v. *Hartford Fire Ins. Co.*, 141 Conn. 313, 316, 105 A.2d 780; *King* v. *Travelers Ins. Co.*, supra; *Rinaldi* v. *Prudential Ins. Co.*, 118 Conn. 419, 424, 172 A. 777;

---

[1] That holding is somewhat diluted by the majority's attempt to distinguish the facts of *Mazzilli* v. *Acc. & Cas. Ins. Co. of Winterthur*, 35 N.J. 1, 170 A.2d 800, from the facts of the present case insofar as the *Mazzilli* case held, as a matter of law, that "household" is an ambiguous term that cannot be restricted to a "one family-one roof" meaning.

*Westmoreland* v. *General Accident F. & L. Assurance Corporation,* 144 Conn. 265, 274, 129 A.2d 623 (*Daly, J.,* dissenting).

Words such as "family" and "household" can have a variety of meanings depending upon the facts to which they must be applied. See *Rathbun* v. *Aetna Casualty & Surety Co.,* 144 Conn. 165, 168, 128 A.2d 327. They "cannot be so limited and strait-jacketed as always to mean, regardless of facts and circumstances, a collective body of persons who live in one house under one common head or manager." *Johnson* v. *State Farm Mutual Automobile Ins. Co.,* 252 F.2d 158, 161 (8th Cir.). It is true that the word household is frequently used to designate persons related by marriage or blood, who dwell together as a family under a single roof; see note, 78 A.L.R.2d 1404, 1405; but numerous cases have held that members of a family need not actually reside under a common roof in order to be deemed part of the same household. See, e.g., *American Service Mutual Ins. Co.* v. *Pugh,* 271 F.2d 174 (8th Cir.); *Aetna Casualty & Surety Co.* v. *Miller,* 276 F. Sup. 341 (D. Kan.); *Lumbermens Mutual Casualty Co.* v. *Continental Casualty Co.,* 387 P.2d 104 (Alaska); *Central Manufacturers' Mutual Ins. Co.* v. *Friedman,* 213 Ark. 9, 209 S.W.2d 102; *Hardware Mutual Casualty Co.* v. *Home Indemnity Co.,* 241 Cal. App. 2d 303, 50 Cal. Rptr. 508; *Cal-Farm Ins. Co.* v. *Boisseranc,* 151 Cal. App. 2d 775, 312 P.2d 401; *Taylor* v. *State Farm Mutual Automobile Ins. Co.,* 171 So. 2d 816 (La. App.), aff'd, 248 La. 246, 178 So. 2d 238; *American Casualty Co.* v. *Harleysville Ins.,* 238 Md. 322, 208 A.2d 597; *Mazzilli* v. *Acc. & Cas. Ins. Co. of Winterthur,* 35 N.J. 1, 170 A.2d 800; *Teetsel* v. *Nationwide Mutual Ins. Co.,* 37 Pa. D. & C.2d 246; *American States Ins. Co.*

v. *Walker,* 26 Utah 2d 161, 486 P.2d 1042; *Doern v. Crawford,* 30 Wis. 2d 206, 140 N.W.2d 193; *Raymond* v. *Century Indemnity Co.,* 264 Wis. 429, 59 N.W.2d 459.

Cases discussing the term "household" are collected and discussed in note, 46 A.L.R.3d 1026; note, 78 A.L.R.2d 1404; note, 50 A.L.R.2d 120; note, 1 A.L.R.2d 561; and 19A Words & Phrases (Perm. Ed.) 481. While they are by no means consistent, the cases interpreting insurance policies can be divided into two categories: those involving clauses that exclude from coverage members of the insured's household and those that extend coverage to such persons. Both categories attempt to sustain the insured's claim by applying the rules of construction stated above. Thus, in the extension cases "household" is broadly interpreted, while in the exclusion cases it is given a more restricted meaning. *Cal-Farm Ins. Co.* v. *Boisseranc,* supra, 782.

In *Mazzilli* v. *Acc. & Cas. Ins. Co. of Winterthur,* supra, a leading case on the construction of the word "household," a father owned property on which a house and bungalow were located. His wife and son lived in the bungalow while he lived 150 feet away in the house. The couple were separated and the wife had custody of the son, although the boy had a close relationship with his father and had the freedom of both the bungalow and the house. A neighbor, who was seriously wounded when the boy fired a shotgun at him, recovered a $10,000 verdict against the mother. The issue in the case was whether the mother and son were residents of the father's household since coverage was extended to such persons under the father's liability insurance contract with the defendant.

The defendant insurer contended that the wife was not living under the same roof as the husband and therefore was not covered. The court ruled otherwise, saying that both dwellings constituted the household within the contemplation of the policy. The "same roof" concept of household was discarded under the facts of that case. The court pointed out that there is no absolute requirement in the law that members or residents of the household must live under a common roof. The court further noted (p. 19) that especially meaningful in the factual context was the relationship between the father and the son and the existence of a "substantially integrated family relationship."

The facts in the present case show that the father was in a substantial sense a member of the same "household" as his son. While the father had his own room on Main Street, he spent a considerable amount of time with his children and family, including his former wife, on Whiting Street, staying overnight on numerous occasions, baby-sitting for his former wife, keeping some of his clothes there and having equipment there. He supported his children and was close to all of them, especially the plaintiff Richard.

The father, reading the insurance contract, would not be likely to understand the word "household" as excluding his children from protection. The defendant's experts, in writing such a contract, should define language with such precision and clarity that the ordinary man will have no difficulty understanding what he is buying. See *Scranton* v. *Hartford Fire Ins. Co.*, 141 Conn. 313, 316, 105 A.2d 780; *Bessette* v. *Fidelity & Casualty Co.*, 111 Conn. 549, 555, 150 A. 706. The use of innocuous language in

an insurance policy susceptible to reasonably different connotations in the minds of policyholders should not be encouraged by the courts.

Since the father and the plaintiff son lived together at Whiting Street and to a lesser degree at Main Street under circumstances that amply disclosed a "substantially integrated family relationship," the requirements of the policy were met. I find myself in complete agreement with the trial court's conclusion that the plaintiff Richard was a resident of his father's household.

I would find no error and would reaffirm the order to arbitrate.