# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

COTTY JAAK LUKK, )
      )
      Plaintiff, )
      )
v. )     **C.A. N12C-03-228 PRW**
      )
STATE FARM MUTUAL )
AUTOMOBILE INSURANCE )
COMPANY, )
      )
      Defendant. )

Submitted: July 29, 2014
Decided: August 27, 2014

## MEMORANDUM OPINION

*Upon Plaintiff's and Defendant's Cross-Motions for Summary Judgment,*
**DENIED.**

Joseph J. Longobardi, III, Esquire, Longobardi & Boyle, LLC, Wilmington, Delaware, Attorney for Plaintiff.

Patrick G. Rock, Esquire, Heckler & Frabizzio, Wilmington, Delaware, Attorney for Defendant.

**WALLACE, J.**

## I. INTRODUCTION

Plaintiff Cotty Jaak Lukk ("Mr. Lukk") has filed this claim against State Farm Mutual Automobile Insurance Company ("State Farm") for breach of contract for failing to pay personal injury protection ("PIP").[1] Mr. Lukk says he is due these benefits under his father's State Farm insurance policy (the "Policy").[2] Mr. Lukk argues that he is entitled to PIP coverage under the Policy because he is a member of his father's household.[3] Mr. Lukk has moved for summary judgment, urging, *inter alia*, the Court to interpret the Policy's no-fault coverage language as including him as a contemplated insured.[4]

State Farm argues that Mr. Lukk is due no benefits under his father's Policy because: (1) he is not an "Insured"—while he is an immediate family member of his father's, State Farm claims Mr. Lukk has a "separate household"; and (2) Mr. Lukk failed to submit medical expenses and bills to State Farm within two years as required by the Policy and

---

[1] In a separate case before this Court, he sues for State Farms' refusal to pay underinsured motorist benefits. The Court previously denied Mr. Lukk's motion for summary judgment regarding those benefits. *Lukk v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 1891000 (Del. Super. Ct. May 12, 2014) ("*Lukk I*").

[2] Complaint, dated March 21, 2012, at ¶¶ 10-11 [hereinafter "Complaint"].

[3] Complaint at ¶ 9.

[4] Pltf's Mot. for Summary Judgment, dated June 2, 2014, at 2-4 [hereinafter "Pltf's MSJ"].

21 *Del. C.* § 2118.[5]  For the following reasons, Mr. Lukk's and State Farm's cross-Motions for Summary Judgment are **DENIED**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[6]

On June 6, 2010, Mr. Lukk was seriously injured in an accident that took place in Indiana County, Pennsylvania while he was the passenger in a friend's truck.  Mr. Lukk's friend was liable for the one-vehicle accident and Mr. Lukk collected the $35,000.00 policy limit from his friend's insurance company.  He then made a claim for PIP coverage through the Policy.[7]  The no-fault Policy language in question states:

> Insured means:
>
>> 1. any person while occupying or injured in an accident as a pedestrian by your car or a newly acquired car, if registered in Delaware; and
>>
>> 2. you [Mr. Lukk's father] or any member of your household while occupying or injured in an accident as a pedestrian by any other land motor vehicle designed for use on public highways and which is not:

---

[5]    Def's Mot. for Summary Judgment, dated June 3, 2014, at 2-3 [hereinafter "Def's MSJ"].  State Farm further alleged that Mr. Lukk failed to submit to an Examination Under Oath ("EUO") as required under the "Insured's Duties" section of the Policy.  Def's MSJ at 4.  State Farm subsequently withdrew this claim (Trans. I.D. 55707583), and therefore the Court need not address it here.

[6]    Unless otherwise noted, the factual background is derived from the *Lukk I* opinion.

[7]    *See* Complaint at ¶ 10.

a. Operated on rails or tracks; or

b. Owned by or furnished for the regular use of you or any member of your household.

Member of your household means:

1. Members of your immediate family who have no separate household; and

2. Persons who reside with and are economically dependent upon you.[8]

State Farm refused to provide coverage, alleging that since Mr. Lukk has claimed that he resides with more than one parent, he is not an "Insured" under the Policy.[9]

At the time of the accident, Mr. Lukk was 18 years old and living in an apartment while attending a Western Pennsylvania technical college. During Mr. Lukk's childhood, his parents shared equal custody; he alternated between their houses week-by-week. During his childhood and into his college years, Mr. Lukk maintained a bedroom with furniture, clothing and personal effects in both his father's and his mother's home.[10] Mr. Lukk's father and mother jointly shared his expenses including his car

---

[8] Exhibit B, Def's MSJ at 1 (No-Fault Coverage section from the Policy).

[9] Def's MSJ at ¶ 9.

[10] At the time of the accident, Mr. Lukk's mother resided in Chadds Ford, Pennsylvania. His father then-resided in Wilmington, Delaware, but has since moved to Kennett Square, Pennsylvania. *Lukk I*, 2014 WL 1891000, at *1.

insurance payments, cell phone payments and spending money.[11] Mr. Lukk had access to two vehicles, one registered to his father and the other registered to his mother.[12] Mr. Lukk's primary source of income was his parents' shared support. That income was supplemented with student loans.[13]

Mr. Lukk has filed a breach of contract action in this Court against State Farm.[14] Mr. Lukk incurred substantial personal injuries and expenses[15] from the accident that he claims are covered because he was insured under the Policy.[16] According to Mr. Lukk, State Farm breached the Policy when

---

[11] Mr. Lukk's mother paid for his cell phone at the time of the accident, but his father paid for it at other times. The breakdown of which parent paid which particular expenses at what time is not exactly clear, beyond a few specific examples. Nor is it clear what is the percentage breakdown of Mr. Lukk's total economic burden carried by each. No matter what the exact breakdown is, it can be fairly inferred from the record that both Mr. Lukk's mother and father made a good faith effort to divide his expenses and bills equally. *Id.*

[12] Mr. Lukk's primary automobile, a Ford F-150 pickup truck, was registered in his mother's name and was under his mother's insurance policy, although his father helped make the insurance payments. Mr. Lukk's secondary automobile, a Datsun 280-ZX, was registered in his father's name and was under his father's insurance policy, but was stored in a garage at his mother's house. *Id.*

[13] Lukk Dep. Ex. 2 to Pltf's MSJ at 9. Mr. Lukk testified that he believed both parents co-signed for his student loans. Lukk Dep. Ex. 2 to Pltf's MSJ at 9.

[14] Complaint at ¶ 10.

[15] As a result of the accident, Mr. Lukk now suffers from paraplegia and must deal daily with the host of attendant debilitating medical issues associated with that condition. *See, e.g.,* Mot. for Cont., *Lukk v. State Farm Mut. Auto. Ins. Co.*, Del. Super., C.A. No. N12C-06-161 (May 12, 2014) (D.I. 33).

[16] Complaint at ¶ 5, 8-10.

it refused to pay him PIP benefits. And so he demands full payment of those benefits, costs and interest.[17] He is now seeking summary judgment on this PIP claim.[18]

State Farm counters that in order for Mr. Lukk to be properly considered an "Insured" under the language of the Policy he must, as a threshold matter, demonstrate that he (1) has no separate household other than his father's; (2) resides solely with his father; and (3) is financially dependent upon only his father.[19] As Mr. Lukk has alleged that he resided in more than one place—at least his father's and his mother's—State Farm argues that Mr. Lukk has a "separate household," and therefore cannot properly be considered an "Insured" under the Policy.[20] Additionally, State Farm argues that Mr. Lukk failed to submit his medical records and bills as required by both 21 *Del. C.* § 2118[21] and Section 3(c) of the Policy's "Insured's Duties," and therefore Mr. Lukk should not be entitled to recover benefits. State Farm now seeks summary judgment in its favor.

---

[17]    Complaint at 3.

[18]    Pltf's MSJ at 4.

[19]    Def's MSJ at 2.

[20]    *Id.*

[21]    DEL. CODE ANN. tit. 21, § 2118(a)(2)(h)(i)(1) (2014).

## III. STANDARD OF REVIEW

Summary judgment is appropriate where the record indicates that there are no genuine issues of material fact and where, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to summary judgment as a matter of law.[22] The moving party has the burden of proof to show that there are no genuine issues of material fact.[23] If a motion is properly supported, the burden shifts to the non-moving party to establish the existence of material issues of fact.[24] "Summary judgment will not be granted under circumstances where the record reasonably indicates that a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances."[25]

When parties have filed cross-motions for summary judgment, as here, our courts have noted that "the standard for summary judgment 'is not

---

[22] Del. Super. Ct. Civ. R. 56(c).

[23] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).

[24] *Id*. at 681.

[25] *Burris v. Penn Mart Supermarkets, Inc.*, 2006 WL 2329373, at *1 (Del. Super. Ct. July 13, 2006) (citing *Ebersole v. Lowengrub,* 180 A.2d 467, 468-69 (Del. 1962)).

altered.'"[26]   "Moreover, the existence of cross motions for summary judgment does not act *per se* as a concession that there is an absence of factual issues."[27]  "Rather, a party moving for summary judgment concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for the purposes of its own motion, and does not waive its right to assert that there are disputed facts that preclude summary judgment in favor of the other party."[28]  Thus, "the mere filing of a cross motion for summary judgment does not serve as a waiver of the movant's right to assert the existence of a factual dispute as to the other party's motion"[29] and "cross-motions for summary judgment are not the procedural equivalent of a stipulation for a decision on a 'paper record.'"[30]

---

[26]   *Total Care Physicians, P.A. v. O'Hara,* 798 A.2d 1043, 1050 (Del. Super. Ct. 2001) (citing *United Vanguard Fund, Inc. v. TakeCare, Inc.,* 693 A.2d 1076, 1079 (Del. 1997)).

[27]   *Fox v. RC Fabricators, Inc.*, 2013 WL 6916917, at *2 (Del. Super. Ct. Dec. 20, 2013) (quoting *Total Care Physicians*, 798 A.2d at 1050 (internal citations omitted)).

[28]   *Id.* (internal citations omitted).

[29]   *JJID, Inc. v. Del. River Indus. Park, LLC*, 2007 WL 2193735, at *3 (Del. Super. Ct. July 30, 2007) (quoting *Sexton v. State Farm Fire & Cas. Co.,* 2003 WL 23274849, at *3 (Del. Super. Ct. Dec. 30, 2003)).

[30]   *Empire of America Relocation Servs., Inc. v. Commercial Credit Co.*, 551 A.2d 433, 435 (Del. 1988).

## IV.   DISCUSSION

### A.   The no-fault Policy language does not unambiguously create a conjunctive two-part (multi-subpart) requirement for recovery eligibility.

Without doubt, under the no-fault Policy language relied on by both parties, a "member of [Mr. Lukk's father's] household" may be eligible to receive benefits for PIP coverage under the Policy. On this the parties agree. But the Policy's language also requires the Court (and eventually the fact finder at trial) to consider certain factors in determining whether Mr. Lukk can properly be considered a "member of [his father's] household." Those factors include whether, at the time of the accident, Mr. Lukk: (1) was an immediate member of his father's family; (2) "ha[d]" a "separate household"; (3) "reside[d]" with his father; and (4) was economically dependent upon his father.[31] What is unclear from a reading of the Policy language—and which is a matter of first impression in this (and perhaps any) jurisdiction—is whether each of these factors are elements of a single test of eligibility, *i.e.*, whether a person is only a "member of [a State Farm policy-holder's] household if he meets all four criteria, or whether there are two potential methods of determining household membership. Because the contract language is ambiguous, the Court finds the latter.

---

[31]   Exhibit B, Def's MSJ at 1 (No-Fault Coverage section from the Policy).

The proper construction of a contract is purely a question of law.[32] "[W]hen the language of an insurance contract is clear and unequivocal, a party will be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented."[33] "A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[34]

The true test of a contract's potential ambiguity is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.[35] To the extent possible, the Court will read contractual provisions in a manner that will give effect to each term of the agreement, and which will not render any

---

[32] *Aetna Cas. & Sur. Co. v. Kenner*, 570 A.2d 1172, 1174 (Del. 1990).

[33] *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. 1982).

[34] *Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) (internal citation omitted).

[35] *Steigler v. Ins. Co. of North America*, 384 A.2d 398, 401 (Del. 1978).

provision "illusory or meaningless."[36]  Where one of its provisions is deemed ambiguous, Delaware courts consistently hold that "the doctrine of *contra proferentem* requires that the language of an insurance policy be construed most strongly against the insurance company that drafted it."[37]

The no-fault Policy language defines a "member of your household" as:

"1. Members of your immediate family who have no separate household; and

2. Persons who reside with and are economically dependent upon you."[38]

State Farm argues that these two phrases are conjunctive and prescribe required elements that each must be satisfied for a person to be properly considered a "member of [a policy-holder] household."  In State Farm's view, Mr. Lukk had at least one other "separate household" at the time of the accident.  Therefore, State Farm says, he is clearly not a "member of [his father's] household," and clearly not entitled to receive PIP benefits under his father's policy.  Not so.  The actual Policy language provides far less clarity than State Farm contends.  Both the structure and the words used by

---

[36]  *Sonitrol Holding Co. v. Marceau Investissements,* 607 A.2d 1177, 1183 (Del. 1992).

[37]  *O'Brien v. Progressive Northern Ins. Co.*, 785 A.2d 281, 288 (Del. 2001).

[38]  Exhibit B, Def's MSJ at 1.

the drafter inject ambiguity into the meaning of the questioned Policy provision.

In drafting the Policy's language, State Farm first chose to use distinctly different subjects for each phrase. The first speaks of "members of [the policy-holder's] immediate family" and requires that such family members have "no separate household." By contrast, the second merely refers to a broad and unspecified group of "Persons," and requires that such "Persons" both "reside with" and be "economically dependent upon" the policy-holder. If State Farm were right, the second phrase's language mandating residency, for instance, would be redundant and meaningless; just a handful of words before it is stated that a "person" must "reside," the Provision already said one could "have no separate household." When different words are used in two clauses like this it must be presumed different meanings are intended. To adopt the interpretation that State Farm urges, the Court would have to both overlook distinct and conflicting language, and then render portions of the language "illusory or meaningless."

But no court has adopted or endorsed the interpretation that State Farm advances. While other courts have analyzed similar factors, such as

residency[39] or economic dependency,[40] none has reviewed how the factors in the Policy language function together.

The Court finds the Policy language in question to be ambiguous and will not render portions of the language "illusory or meaningless" to achieve State Farm's preferred interpretation. Under the doctrine of *contra proferentem* the Court construes against the drafter—State Farm. Reviewing the Policy language as such, the Court finds that the no-fault coverage language provides for two independent ways one might be a member of the policy-holder's household. Mr. Lukk could be *EITHER*: (1) a "member[] of [his father's] immediate family who ha[s] no separate household;" *OR* (2) a "[p]erson[] who reside[s] with and [is] economically dependent upon [his father]." Mr. Lukk is therefore not foreclosed from coverage simply because he may be found to "have" a "separate household"; he might still demonstrate that he is both a person who resided with his father and was economically dependent upon his father at the time of the accident.

---

[39] *See Ellis v. Travelers Ins. Co.*, 1994 WL 16398663, at *2-5 (Del. Super. Ct. Aug. 24, 1994).

[40] *Ramirez v. Duenas*, 2008 WL 2229260, at *5-6 (N.J. Super. Ct. App. Div. June 2, 2008).

**B.** **There remain genuine issues of material fact with respect whether Mr. Lukk "ha[d a] separate household", "reside[d]" with, and/or was "economically dependent upon" his father at the time of the accident.**

Delaware courts have noted that generally the determination of "residence . . . is a question of fact, to be answered by an examination of the circumstances of each individual case."[41] The same can be said of whether one"ha[s a] separate household." Any one factual determination will be made on a motion for summary judgment only when the underlying facts are not disputed and the inferences drawn from those facts "point inescapably to a single conclusion."[42] Here they do not.

The record demonstrates that Mr. Lukk had a designated bedroom in each of his parents' homes, had furniture, clothing and personal effects at each home, and split his time (when he was home from school) evenly between his mother and father. Furthermore, Mr. Lukk's parents testified that they attempted to split all of his expenses evenly. While State Farm argues that Mr. Lukk used his mother's address as his address-of-record for school and licensing purposes, these facts are conclusive neither as to where

---

[41] *Fisher v. Novak*, 1990 WL 82159, at *2 (Del. Super. Ct. June 11, 1990). *See Davenport v. Aetna Casualty and Surety Co. of Illinois*, 241 S.E.2d 593 (Ga. Ct. App. 1978) (holding that place of residence is a jury question); *Griffith v. Security Insurance Co. of Hartford*, 356 A.2d 94, 97 (Conn. 1975) (reasoning that the issue of deciding whether a person is a resident of a household is a factual decision).

[42] *Fisher*, 1990 WL 82159, at *2.

Mr. Lukk "reside[d] nor if he had a "separate household."[43]  And there likewise remains the question of his state of economic dependence or independence on June 6, 2010.

The Court in deciding a summary judgment motion must identify disputed factual issues whose resolution are necessary to decide the case, but the Court must not decide those issues.[44]  And "[u]nless the [] Court is reasonably certain that there is no triable issue, it is within the [] Court's discretion to decline to decide the merits of the case in a summary adjudication, and to remit the parties to trial."[45] There exist more than one genuine issue of material fact and the jury, as finder of fact, must resolve this issue.   Plaintiff's and Defendant's Cross-Motions for Summary Judgment are therefore **DENIED**.

---

[43]     This Court previously recognized, in *Lukk I*, that it is possible for a person to have only one "primary residence" for the purposes of the Policy's underinsured motorist coverage.  2014 WL 1891000, at \*3-6 (citing *Fisher,* 1990 WL 82159, at \*2; *see also Powell v. State Farm Fire and Cas. Co.,* 1996 WL 190023 (Del. Super. Feb. 27, 1996) (adopting the definition of "reside" articulated in *Fisher*)).   But, under this different Policy provision, the question is merely whether Mr. Lukk was *a* resident of his father's household at the time of the accident.  And that question of fact is one for the jury not, given this record, one properly decided by the Court in a summary proceeding.

[44]     *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99 (Del. 1992).

[45]     *Cross v. Hair*, 258 A.2d 277, 278 (Del. 1969) (internal citations omitted).

**C.** **State Farm is not entitled summary judgment for Mr. Lukk's failure to submit medical expenses or other documentation of his injuries.**

State Farm directs the Court to 21 *Del. C.* § 2118(a)(2)(i)(1) and Section 3(c) of the Policy's "Insured's Duties" section. The statutory language of 21 *Del. C.* § 2118(a)(2)(i)(1) requires an insured to submit medical expenses "to the insurer as promptly as practical, in no event more than 2 years after they are received by the insured."[46] This statutory framework has created corresponding rights and duties of both the insurance carrier and the insured. Section 2118(a)(2)(i)(1) creates the insured's statutory obligation to submit claims for benefits as promptly within two years of receipt as practical.[47] This provision has been interpreted as requiring a carrier to pay only those expenses incurred within two years of the underlying accident that are submitted to the carrier within two years of the accident.[48] But such a limitation is neither without condition not absolute. It may only be applicable if the carrier provides notice of the two-

---

[46] DEL. CODE ANN. tit. 21, § 2118(a)(2)(h)(i)(1) (2014). This two-year window may be expanded by an additional ninety days if "impractical to present to an insurer within the 2 years [window]." DEL. CODE ANN. tit. 21, § 2118(a)(2)(h)(i)(2) (2014). The present delay exceeds even the two years plus ninety days, however, therefore the Court need not decide whether such an extension would be proper here.

[47] *Harper v. State Farm Mut. Auto. Ins. Co.*, 703 A.2d 136, 139-40 (Del. 1997).

[48] *State Farm Mut. Auto. Ins. Co. v. Smith*, 2000 WL 1211153, at *3 (Del. Super. Ct. Aug. 7, 2000) (internal citation omitted).

year time limitation to the insured.[49] The limitation of coverage flowing from an insured's failure to submit medical bills may also be contingent upon a carrier's showing that it has suffered prejudice from an inexcusable delay.[50] And when an insured files suit in a PIP claim, it can reasonably be said that the defendant insurer is then placed on notice of the medical expenses.[51]

In addition to the statutory requirement of disclosure of medical expenses, State Farm argues that Mr. Lukk failed to fulfill his obligations under Section 3(c) of "Insured's Duties," namely

> Any person or organization making claim under this policy must:
>
> (1) . . . . ;
>
> (2) under No-Fault Coverage, give us proof of any reasonable and necessary expenses and loss of earnings incurred as

---

[49] *See Donophan v. Montgomery Mut. Ins. Co.*, 1996 WL 191197, at *4-5 (Del. Super. Ct. March 18, 1996).

[50] *State Farm Mut. Auto. Ins. Co. v. Johnson*, 320 A.2d 345, 346-47 (Del. 1974) ("There can be no doubt that the purpose of a notice provision is to protect an insurance company from any prejudice resulting from an inordinate lapse of time between an accident and the company's awareness thereof. The question of prejudice is, therefore, paramount.").

[51] *Roberts v. Northern Ins. Co. of New York*, 2009 WL 1482231, at *4 (Del. Super. Ct. May 6, 2009) (citing *Salvatore v. State Farm Mut. Auto. Ins. Co.,* 2005 WL 1952904, at *1 (Del. Super. Ct. July 28, 2005) (holding that plaintiff's filing of the complaint was sufficient notice of lost wages claim when the lost wages claim had not been provided to the insurer within 27 months of the accident)).

> promptly as practical, but no later than 27 months after the accident. Any medical expenses payable under item 1.b. of the No-Fault Coverage definition of medical expenses shall be submitted within 90 days after they are incurred; . . . .

This Policy language is markedly similar to that in § 2118, and therefore the Court will analyze the dual obligations together.

Mr. Lukk suffered extensive debilitating injuries in the June 2010 accident.  He filed the present action against State Farm on March 21, 2012, within the two-year window required by both statute and the Policy.  For the purposes of Delaware law, filing suit provided sufficient notice to State Farm to satisfy his requirement and allayed any prejudice to the carrier from any claimed lack of more specific notice.  Undeterred, State Farm argues that Mr. Lukk should have done more, that his failure to produce itemized bills or receipts of other medical expenses debars his entitlement to relief. But in this circumstance, State Farm's own actions suspended any arguable duty Mr. Lukk had to do more to meet this requirement.

In a letter from State Farm to Mr. Lukk's former counsel -- dated September 1, 2010 and mailed after receiving notice of Mr. Lukk's claim on the Policy -- State Farm stated:

> It is questionable whether Cotty Lukk qualifies as an insured, as defined in the policy, to qualify for No-Fault coverage.

> For these reasons and for any reasons which may become known, [State Farm] reserves all rights under the policy, ***including the right to deny coverage in its entirety***.

When an insurance company has denied a coverage obligation, an insured is no longer bound "to continu[ally] submit claims so that the [carrier] could deny them."[52] State Farm was within its rights to inform Mr. Lukk that it did not believe that he fit the definition of an "Insured" under the Policy. Once it did so, however, State Farm could no longer argue that it was unaware of Mr. Lukk's claims for the sought medical and related expenses.[53] Within months of the accident, State Farm had knowledge of Mr. Lukk's claims. It cannot now credibly suggest it is prejudiced by Mr. Lukk's failure to engage in the futile exercise of submitting more detailed medical expenses for State Farm to repeatedly dishonor.[54]

As State Farm had notice of Mr. Lukk's claims within the two-year window prescribed both by statute and the Policy's language, State Farm's Motion to Dismiss as it pertains to Mr. Lukk's failure to produce medical expenses is **DENIED**.

---

[52] *Salvatore*, 2005 WL 1952904, at *1.

[53] *Id.*

[54] *See Johnson*, 320 A.2d at 346-47; *Roberts*, 2009 WL 1482231, at *4.

## V.    CONCLUSION

For the foregoing reasons, there remains a genuine issue or issues of material fact.  Mr. Lukk and State Farm have each, therefore, failed to demonstrate entitlement to summary judgment as a matter of law. Consequently, Plaintiff's and Defendant's Cross-Motions for Summary Judgment are **DENIED**.

**IT IS SO ORDERED.**

*/s/ Paul R. Wallace*
Paul R. Wallace, Judge

Original to Prothonotary
cc:    Counsel via File & Serve