AGNES BESSETTE *vs.* FIDELITY AND CASUALTY
COMPANY.

Second Judicial District, Norwich, April Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued April 29th—decided June 2d, 1930.

*Ralph O. Wells* and *William S. Locke,* for the appellant (defendant).

*Thomas M. Shields,* with whom was *William H. Shields,* for the appellee (plaintiff).

MALTBIE, J.  The plaintiff obtained a judgment against Frank Mader for injuries suffered by reason of his negligent operation of an automobile.  She brings this action to recover the amount of that judgment from the defendant as insurer of Mader's liability for negligence in the operation of the car, under the statute.  Public Acts of 1919, Chap. 331.  The defendant pleads that it had cancelled its policy of insurance before the accident.  If that is so, the plaintiff cannot recover.  *Guerin* v. *Indemnity Ins. Co.,* 107 Conn. 649, 142 Atl. 268.  The case before us turns upon this issue.

On or about July 18th, 1928, Mader took out a policy of liability insurance with the defendant through a local agent at Norwich, Panek, with the understanding that he would pay the premium of $33 in monthly instalments.  On August 2d, 1928, he paid $10, but made no further payments until after the accident out of which this action arose.  The policy contained a provision for cancelation as follows: "Without prejudice to the rights of the Assured as respects anything that may occur during the period that the policy is in force, the Company may cancel this policy at any time by a written notice, stating when the cancelation takes effect, served on the Assured, or sent by registered mail to the Assured at the address given herein, at least five days prior to the date that the cancelation takes effect.  The Assured may cancel this policy by like notice to the Company.  If canceled by the Company, the Company shall be entitled to the earned premium, pro rata, when determined.  If canceled by the Assured, the Company shall be entitled to the earned premium calculated on the basis of the short-rate table set forth below.  The

Company's check served on the Assured, or sent by registered mail to the Assured at the address given herein, shall be a sufficient tender of any unearned premium."

On October 24th, 1928, the defendant wrote Mader that, on account of his failure to pay the premium on the policy, it canceled it as of November 3d, 1928, and demanded of him the amount of the earned premium, $9.76. The resident manager and his staff had no actual knowledge at this time of Mader's payment to Panek. The defendant did not remit or offer to remit to Mader the part of the premium paid by him which would be unearned on November 3d, twenty-four cents, nor did he ever demand it. The amount paid in by him would have been fully earned on November 7th. Mader, within a day or so after receipt of the notice, sought out Panek, explained that he had not made further payments because he had been ill and promised that he would pay within a week or so. Panek replied: "You come up to the office as soon as you can pay; we will take care of you; we will be pleased to reinstate the policy for you; you have nothing to worry about." On November 10th, Mader, by his negligence in the operation of the automobile covered by the policy caused the injuries to the plaintiff for which she is seeking recovery. Almost immediately after the accident Mader paid a clerk in the office of Panek $21 on account of the balance due on the premium, saying nothing about the accident. Later in the day he told Panek of the accident and the payment of $21. Panek then wrote the resident manager of the company, asking the reinstatement of the policy, and stating that, on receipt of the new policy, he would forward a check for the earned premium on the old policy and the premium on the new one. Reinstatement was, however, refused. On No-

vember 12th, Panek called on Mader, told him he must file a report of the accident with the Commissioner of Motor Vehicles, and at Mader's request made out the report which Mader signed. In this report it was stated that Mader had no liability insurance. Mader had dealings with Panek in other matters than those connected with this policy; the latter claimed a debt to himself of $25 and had in his possession a check to Mader for $5. About a month after the refusal of the resident manager to reinstate the policy, Panek sent his brother to Mader to effect a settlement of these matters with him, and in the settlement, Panek gave Mader credit for the $21, the check for $5 was cashed and $3.76 paid by Mader to the brother. In making this settlement, however, nothing was said as to the twenty-four cents unearned premium. So far as appears Mader was not fully informed about the matter until the following April, when he had a conference with Panek and the man in charge at the defendant's claim office in Connecticut.

The defendant claims that the notification to Mader of cancelation of the policy was effective despite its failure to send to him, on or before the day set for the cancelation to be effective, the amount of refund due him as unearned premium. The question of the necessity of such a refund as a condition of cancelation of policies by insurers has been much before the courts and has given rise to diverse conclusions, depending in many instances upon the precise terms of the policy before the court. The most common form in which it has arisen is under the provisions of the New York standard fire insurance policy, which have been copied in a number of other States. Under this and similar forms of policy the greater number of courts passing upon the matter have held that the refund of any unearned premium in the hands of the insurer is a con-

dition precedent to cancelation by it. *Tisdell* v. *New Hampshire Fire Ins. Co.*, 155 N. Y. 163, 49 N. E. 664; *Buckley* v. *Citizens Ins. Co.*, 188 N. Y. 399, 404, 81 N. E. 165; *Hartford Fire Ins. Co.* v. *Stephens,* 18 Ariz. 339, 161 Pac. 684; 13 L. R. A. (N.S.) 886, note; Richards on Insurance (3d Ed.), p. 388; 5 Cooley's Briefs on Insurance (2d. Ed.), p. 4601. This construction of the cancelation provision in these policies has, however, been criticised by writers of textbooks and there is a substantial body of authority which takes an opposite position. *Davidson* v. *German Ins. Co.,* 74 N. J. L. 487, 65 Atl. 996; *Mangrum & Otter, Inc.* v. *Law Union & Rock Ins. Co.,* 172 Cal. 497, 157 Pac. 239; *Webb* v. *Granite State Fire Ins. Co.,* 164 Mich. 139, 129 N. W. 19; *Schwarzchild & Sulzberger Co.* v. *Phœnix Ins. Co.,* 115 Fed. 653, 654; *Austin Fire Ins. Co.* v. *Polemanakos* (Texas), 207 S. W. 922; and see *Parsons & Arbaugh* v. *Northwestern National Ins. Co.,* 133 Iowa 532, 110 N. W. 807; Richards on Insurance (3d Ed.), p. 387; Vance on Insurance, p. 495.

We are not, however, required at this time to determine the construction of the cancelation clause in the standard fire insurance company policy because the policy before us differs radically from that policy in its terms. Those courts which have held that under the standard fire policy it is not necessary that the unearned premium shall be returned in order to work a cancelation stress the clause in the provision for cancelation that it is to be returned "on the surrender of this policy or last renewal," regarding this as fixing the time of payment not at the cancelation of the policy but at its surrender, which may be before or after the day set for cancelation. The policy before us contains no such clause but reads: "If canceled by the Company, the Company shall be entitled to the earned premium, pro rata, when determined. If can-

celed by the Assured, the Company shall be entitled to the earned premium calculated on the basis of the short-rate table set forth below." We do not regard the words "when determined" as indicating an intent to postpone the time for the return of the unearned premium beyond the day set for the cancelation to be effective. This policy does not present a situation where it might be impossible to determine the amount of premium until the cancelation of the risk or where that determination might reasonably be subject to delay. See *Talge Mahogany Co.* v. *Burrows,* 82 Ind. App. 253, 143 N. E. 692. Here the amount of the unearned premium, whether determined upon the pro rata basis or upon that of the short-rate table stated in the policy could be a matter of but a few moments time, and might be made as well before as after the date set for the cancelation. The lack of reason for any postponement for the determination of the unearned portion of the premium indicates that this language was taken over from some form of policy covering a different type of risk and as here used it can have no more effect than if it read, "as it may be determined." On the other hand, the final sentence in the cancelation clause we have quoted, that the company's check served on or mailed to the assured at the address given in the policy shall be a sufficient tender of any unearned premium, more than hints at an attempt to meet some obligation of the company of more consequence than a mere indebtedness to the amount of the unearned premium. When cancelation occurs under the provision of this policy, at some time the premium in the hands of the insurer, where it is not all earned, becomes subject to the rights of each of the parties in a definite proportion. That time is the moment when the policy is canceled. At that moment the right of the insurer to retain the amount

of the unearned premium ceases and its obligation to deliver it to the assured comes into being; if it retains the money longer it commits a breach of its contract. It would not be consonant with a proper regard for the rights of the parties to hold that it might cancel the policy under its terms and at the same time retain the unearned premium in violation of its terms. Under the provisions of the policy before us, the cancelation can only be made if the payment or tender of the unearned premium is made on or before the day set for the cancelation to become effective. See *Hansell-Elcock Co.* v. *Frankfort M. A. & P. G. Ins. Co.,* 177 Ill. App. 500, 507.

We are fortified in this view by certain extraneous circumstances to which we cannot shut our eyes. The policy was drawn by some one skilled in insurance law. The company is a New York corporation. Certainly its officers charged with the preparation of its policies must have known of the decisions of the New York courts to which we have referred and it is not too much to assume that they knew of the diversity of rulings as to the necessity of the return of any unearned premium as a condition of cancelation, even under policy provisions more indicative of a contrary intent than the one before us. This policy, unlike the standard fire policy, is not one the provisions of which are prescribed by law. It lay in the power of the defendant to formulate its terms so as to remove any doubt as to the meaning and intent of the provision for cancelation. See *Molyneaux* v. *Royal Exchange Assurance,* 235 Mich. 678, 209 N. W. 803. Yet it chose to leave the provision in an ambiguous form. Under such circumstances the rule that in case of doubt the policy is to be construed with reasonable strictness to uphold the rights of the assured has full application. *Petello* v. *Teutonia Fire Ins. Co.,* 89 Conn. 175, 181,

93 Atl. 137; *Dickinson* v. *Maryland Casualty Co.*, 101 Conn. 369, 377, 125 Atl. 866.

We cannot accept the contention of the defendant, that if the cancelation was ineffective on the day named in it, November 3d, it became effective when on November 7th the full amount of the premium had been earned. This claim runs counter to the language of the policy, that the notice shall state "when the cancelation takes effect." It would make the time of cancelation dependent upon matters extraneous to the notice and contrary to its very terms. Moreover, such a construction would violate the rule that a notice of cancelation must be definite and certain. *Davidson* v. *German Ins. Co.*, 74 N. J. L. 487, 491, 65 Atl. 996; *Pomerantz* v. *Mutual Fire Ins. Co.*, 279 Pa. St. 497, 124 Atl. 139; *Payne* v. *Insurance Co. of North America*, 170 Mo. App. 85, 156 S. W. 52; 3 Joyce on Insurance (2d Ed.) § 1670; 6 Couch, Cyclopedia of Insurance Law, § 1442.

There is nothing in the facts to support the defendant's claim that Mader would be estopped to take advantage of the failure to return the unearned premium to him. Such an estoppel must rest upon Mader's knowledge, derived from the demand in the notice of cancelation to him for the amount of earned premium, that the officers of the company in charge of the matter did not know of the $10 payment he had made, his action thereafter, and his failure to ask for the return of the premium. So far as the first is concerned, upon receipt of the notice Mader went at once to Panek, the local agent with whom he had had his dealings, taking the notice with him, talked the matter over with him and received his assurances that it would be all right. Certainly it was not incumbent upon Mader to take the matter up with the general officers of the company. If the company suffered

through its ignorance of the payment of the premium, this was due, not to anything Mader did or failed to do, but to the fault of its own agent or employees. Mader's conduct cannot be said to have misled it to its disadvantage. Nor can the company base an estoppel upon Mader's failure to demand the unearned premium which it was its duty to return without demand. Mader may rightly rest upon the ineffectiveness of the defendant's attempt at cancelation. *Artificial Ice Co.* v. *Reciprocal Exchange,* 192 Iowa, 1133, 184 N. W. 756; *Hartford Fire Ins. Co.* v. *Tewes,* 132 Ill. App. 321, 331.

The trial court has found that there was no waiver, and upon the facts we cannot say that that conclusion was unreasonable or illegal. If waiver is here used in the sense of the intentional relinquishment of a known right, certainly we could not say that as matter of law Mader waived his right to the return of the premium as a condition of the cancelation. If the trial court meant to overrule a claim that there was an acceptance of the cancelation despite the failure to return the premium, again we cannot hold its conclusion to be unreasonable; Mader was evidently not a person of great intellectual attainments and Panek's statement to him when they talked over the cancelation, which we have quoted, and Mader's subsequent conduct as a whole might fairly be taken to indicate a belief on his part that the policy was in some way to be continued in force. If it appeared that the twenty-four cents apparently involved in the settlement made between Mader and Panek's brother came from the defendant and that Mader realized when the settlement was made that he was being given credit for that sum as unearned premium, the defendant's claim that he finally received and accepted that unearned premium

would have merit, but lacking these elements, it cannot be sustained.

There is no error.

In this opinion the other judges concurred.