INTERNATIONAL HARVESTER CRED-IT CORPORATION, Plaintiff,

v.

Janice WILKIE and Patrick Gibbons, Defendants and Third-party Plaintiffs/Appellants,

v.

AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, Third-party Defendant/Appellee.

No. 81–1524.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 28, 1982.

Decided Dec. 17, 1982.

Milton L. Mack, Jr., Detroit, Mich., for defendants and third-party plaintiffs/appellants.

John D. Burtch, Terry Welch, Mount Clemens, Mich., for third-party defendant/appellee.

Before KENNEDY and KRUPANSKY, Circuit Judges, and WILHOIT,* District Judge.

PER CURIAM.

Plaintiff International Harvester Credit Corporation (International Harvester) held a note for one 1973 International Tractor which had been purchased by defendant/ap-

* Hon. Henry R. Wilhoit, United States District Judge, for the Eastern District of Kentucky, sitting by designation.

pellant Janice Wilkie (Wilkie). When the vehicle was subsequently stolen, International Harvester commenced the instant action against Wilkie and secured a consent judgment in the sum of $6,500.[1] This judgment is not challenged on appeal. Wilkie initiated the instant cause of action as third party-plaintiff against third-party defendant/appellee American Bankers Insurance Company of Florida (American Bankers) seeking indemnification from American Bankers for the amount owed by Wilkie to International Harvester.

The facts are undisputed. On July 8, 1976 American Bankers, through its agent Fowler Agency, Inc., issued an insurance policy (IM 357–65–56) to Wilkie covering a 1977 Peterbilt Tractor for the period May 18, 1976 to May 18, 1977. On May 31, 1977, American Bankers renewed that policy for the term May 18, 1977 to May 18, 1978 (IM 357–74–96). On December 27, 1977, Fowler Agency, Inc. issued a general change endorsement to the policy adding a 1973 International tractor; the policy included $13,000 coverage for theft.

On March 10, 1978, American Bankers mailed a notice of cancellation of policy IM 357–74–96 to Wilkie who received said notification March 13, 1978. American Bankers did not notify International Harvester of the cancellation, although required to do so by the policy. The notice to Wilkie represented that the excess of paid premium would be refunded on demand. On March 13, 1978, the date of receipt of notice, Wilkie telephoned Fowler Agency, Inc. requesting return of the excess premium and advising them that said funds were necessary to purchase alternate insurance. Similar demand was made on subsequent dates. No portion of the unearned premium was remitted until July 15, 1978, upon which date $522 was forwarded by Fowler Agency, Inc.[2]

As aforenoted, the insurance policy by its terms was to expire on May 18, 1978. On May 27, 1978, approximately 2½ months after Wilkie had received notice that the policy was cancelled, and approximately 9 days after the insurance policy would have expired on its own terms had it not been cancelled theretofore, Wilkie parked the 1973 International tractor at the Metro-Truck Stop in Dearborn Heights, Michigan, allegedly for the reason that she had no insurance on the vehicle and could afford none since the unearned premium had not been remitted. Sometime between May 27, 1978 and June 8, 1978 the vehicle was stolen from the premises of the Metro-Truck Stop and has never been recovered.

The district court concluded that no legal cognizable cause of action supported Wilkie's claim for indemnity since the vehicle was stolen after the date upon which the insurance contract would have expired on its own terms and granted American Bankers' motion for summary judgment. This appeal ensued.

■ Wilkie's first cause of action is predicated upon the theory that American Bankers was negligent in remitting the unearned premium thereby proximately causing the vehicle to be uninsured for lack of sufficient funds to purchase alternate insurance and proximately causing the vehicle to have been stolen since Wilkie was forced to park the vehicle for lack of insurance. Since Wilkie had affirmatively informed American Bankers that remittance of the unearned premium was necessary to purchase alternate insurance, it is alleged that the injury resulting from American Bankers' negligence was foreseeable. Since the duty to refund the unearned premium continued beyond the policy expiration date, Wilkie asserts, this tort action arising from the contractual undertaking is not limited to damages accruing within the term of the insurance policy.

---

1. International Harvester's complaint is not contained in the appellate record. It is assumed that federal jurisdiction was predicated upon diversity of citizenship. 28 U.S.C. § 1332.

2. Wilkie avers an additional $40–50 is still due and owing.

The Court concludes that this cause of action is without merit. Wilkie relies upon *Clark v. Dalman,* 379 Mich. 251, 150 N.W.2d 755 (1967) in support of the proposition that actionable negligence may arise out of a contractual relationship. In *Clark,* an action for personal injury rather than nonfeasance of a contract, the Supreme Court of Michigan observed that a "duty of care . . . may and frequently does arise out of a contractual relationship, the theory being that accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done." *Id.,* 150 N.W.2d at 760. While this statement of law is accurate, it is inapplicable to the action *sub judice* since the duty to remit the unearned premium did not exist at common-law or otherwise exist independent of and apart from the contractual undertaking. In *Clark* the contract was deemed probative of "the relationship of the parties and the nature and extent of the common-law duty on which the tort is based". This presupposes the existence of a common-law basis of action independent of the contractual undertaking.

██ The Michigan Supreme Court has expressly recognized that a viable tort action must predicate upon a breach of duty distinct from the breach of contract and predicate upon active negligence or *mis* feasance; no tort action can be founded upon *non* feasance in the performance of a contract. *Hart v. Ludwig,* 347 Mich. 559, 79 N.W.2d 895 (1956). More specifically, the Michigan Supreme Court has recently adjudged that even a bad-faith breach of an insurance contract does not create an independent and separable tort action. *Kewin v. Massachusetts Mutual Life Insurance Company,* 409 Mich. 401, 295 N.W.2d 50 (1980) (insured sued disability insurer seeking recovery for mental anguish, a tort, allegedly sustained as a result of a bad-faith refusal to pay disability benefits).

Wilkie secondly contends that American Bankers had breached its contract by failing to refund the unearned premium proximately resulting in a lack of sufficient funds to acquire additional insurance and resulting in the loss. Appellant observes that an insurance company is obligated to expeditiously remit unearned premiums "so that [the insured] can use it to procure other insurance before his protection ceases". 6A, Appleman, *Insurance Law & Practice,* Sec. 4819 p. 581.

██ Damages resulting from a breach of an insurance contract are limited to those which "arise naturally from the breach of those that were in the contemplation of the parties at the time of the contract was made." *Kewin v. Mass. Mutual Life Ins. Co.,* 409 Mich. 401, 295 N.W.2d 50 (1980), citing *Hadley v. Baxendale,* 9 Exch. 341, 156 Eng.Rep. 145 (1854). Had the loss occurred during the term of coverage and resulted from American Bankers' failure to remit the unearned premium, such would have been a foreseeable consequence under *Hadley v. Baxendale.* However, it was obviously not in the contemplation of the parties *at the time the contract was made* that failure to promptly remit an unearned premium would foreseeably result in lack of insurance *after* the expiration of the insurance term. This cause of action is specious and was properly rejected by the district court.

██ Wilkie thirdly advances that, as a legal proposition, an insured may employ the doctrine of estoppel to extend the period of coverage under an insurance contract when the insurance company retains the premium after the time that the insurance contract would have expired by its own terms. Not one case, Michigan or otherwise, has been cited in support of this theory of liability. The authority advanced by Wilkie merely provides that an insurer's retention of a premium may constitute an implied acceptance of the application of insurance thereby estopping the insurer from denying liability under the terms of the insurance undertaking. *Gorham v. Peerless Life Ins. Co.,* 368 Mich. 335, 118 N.W.2d 306 (1962) (insurer's delay in accepting or rejecting accident policy application, coupled with retention or premium, was such unreasonable delay as to create implied acceptance); *Cartwright v. Maccabees Mutual*

*Life Ins. Co.,* 398 Mich. 238, 247 N.W.2d 298 (1976) (insurer's delay in processing application for life insurance policy was reasonable even though application was not rejected until 73 days after the application). While an insurer may be estopped from denying the *existence* of an insurance policy, estoppel has not been employed by Michigan courts to *extend* an insurance policy beyond the term provided therein and thereby, in essence, create a second contract which was not bargained for. Other authority cited by Wilkie address attempts by insurers to rescind the policy after injury to a third party on the basis of the insured's misrepresentations. *See: State Farm v. Kurylowicz,* 67 Mich.App. 568, 242 N.W.2d 530 (1976); *State Farm v. Wood,* 25 Utah 2d 427, 483 P.2d 892 (1971); *Barrera v. State Farm,* 71 Cal.2d 659, 79 Cal.Rptr. 106, 456 P.2d 674 (1969). As such, these are inapplicable.

At best, the authority cited by Wilkie supports the proposition that American Bankers' would have been estopped from denying liability under the insurance policy had the vehicle been stolen after the notice of cancellation and *before* the expiration of the insurance term (May 18, 1978). However, detrimental reliance and estoppel have not been employed to create insurance liability *ad infinitum.* Rather, when an insurance policy expires by its own terms it cannot be construed to remain in effect even if no notice of cancellation or expiration was given or received. *Gutierrez v. Dairyland Ins. Co.,* 110 Mich.App. 126, 312 N.W.2d 181, 184 (1981), citing, M.S.A. §§ 24.13202 and .13208.

Last, Wilkie avers that by the terms of the insurance contract, as a prerequisite for the cancellation to become effective, the unearned premium was required to be refunded and failure to so remit left the policy in full force and effect until such time as the policy premium was refunded. However, Wilkie has not supplied this Court with a copy of the insurance contract and has thus not identified any *term* thereof providing that refund of any unearned premium is a condition precedent to effective cancellation or would serve to extend the term of coverage.

Nor does there appear to exist a legal rule within the context of insurance contract law in support of the above proposition. The Supreme Court of Michigan has observed that failure of the insurer to properly remit the unearned premium upon demand of the insured in accordance with the terms of the policy renders the cancellation ineffective. *Molyneaux v. Royal Exchange Assurance of London,* 235 Mich. 678, 209 N.W. 803 (1926). However, Wilkie's reliance upon *Molyneaux* is inapposite since the instant insurance policy had not only been cancelled but it had also expired on its own terms at the time of the theft. Even if the cancellation was ineffective, such failed to render ineffective the expiration of the policy. At best, *Molyneaux* would create liability in American Bankers until May 18, 1978, but not thereafter.

Appellant further relies upon *Bessette v. Fidelity & Casualty Co.,* 111 Conn. 549, 150 A. 706 (1930). In *Bessette* an insurance policy was issued for the amount of $33 for an annual term to be paid in monthly installments. The insured paid to the insurer's local agent a lump sum of $10 shortly after issuance of the policy. Approximately three months after issuance of the policy the insurer, unaware that the $10 had been paid to its agent, notified the insured that the policy would be cancelled on November 3, 1928 and demanded payment of the earned premium to that date in the amount of $9.76. Since only $9.76 had been earned as of November 3, 1928, the date of cancellation, the insurance company was in possession of 24¢ of unearned premium which it did not remit (since it was unaware that $10 had been paid to its agent). The 24¢ would have continued the policy until November 7, 1928, 4 days past the intended cancellation date. On November 10, 1928, the insured was involved in an automobile accident and initiated an action against the insurance company upon being adjudged negligent in a separate proceeding initiated by the injured party. The Supreme Court of Connecticut held that the insurer's failure to remit the unearned premium of 24¢

served to render ineffective the cancellation; the insurer was held liable upon the policy. The court pertinently stated:

> When *cancellation* occurs under the provision of this policy, at some time the premium in the hands of the insurer, where it is not all earned, becomes subject to the rights of each of the parties in a definite proportion. That time is the moment when the policy is cancelled. At that moment the right of the insurer to retain the amount of the unearned premium ceases, and its obligation to deliver it to the assured comes into being; if it retains the money longer, it commits a breach of its contract. It would not be consonant with a proper regard for the rights of the parties to hold that it might cancel the policy under its terms and at the same time retain the unearned premium in violation of its terms. *Under the provisions of the policy before us,* the *cancellation* can only be made if the payment or tender of the unearned premium is made on or before the day set for the cancellation to become effective. (emphasis added).

*Id.* 150 A. at 708. Accordingly, *Bessette,* supports the proposition that failure to remit an unearned premium will render the insurer's *cancellation* ineffective during the term of the policy. However, nothing in *Bessette* intimates that such a failure to remit will render both the cancellation *and expiration* of the contract ineffective. The court solely addressed the insurer's continued liability during the one year term of the contract under the provisions of the policy. Accordingly, *Bessette,* at best, counsels that American Bankers would be liable during the full term of the insurance policy, i.e. until May 18, 1978, for failure to remit an unearned premium.

In sum, every authority cited by Wilkie is inapposite. No court in any jurisdiction has ever held that failure to remit an unearned premium continues the insurance policy effective *ad infinitum* until such premium is remitted.

Accordingly, the judgment of the district court must be and hereby is affirmed.