[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S AND CONNECTICUTUNDERWRITERS INC. CROSS MOTIONS FOR SUMMARY JUDGMENT
In this case cross motions for summary judgment have been filed by the plaintiff and by the defendant Connecticut Underwriters Inc.
The plaintiff is the owner of property in New Haven. In August of 1992 the plaintiff's insurance agent, Neil Matican, applied for and received a so-called all risk property insurance policy through the defendant, an authorized agent of Lloyd's of London. The plaintiff chose to fund the premiums for the policy through a loan from Premium Financing. As stated in the plaintiff's complaint, under the terms of the agreement between the plaintiff and Premium Financing, the latter was authorized to cancel the policy.
On February 8, 1993 the plaintiff suffered a loss by vandalism to his property. He submitted a notice of claim to Mr. Matican who in turn provided notice of the claim to the defendant.
The defendant returned the loss notice on February 15, 1993 claiming the policy had been canceled on December 23, 1992 by Premium Financing for non-payment of premiums to the co-defendant Premium Financing. Paragraph 18 of the first count of the revised complaint alleges neither the plaintiff or Mr. Matican received notice of the cancellation of the policy but then says in paragraph 19 "the only document referring to cancellation received prior to date of loss was a premium accounting request received by plaintiff's representative/agent." Mr. Matican upon receipt of this document claims to have called "an individual named Rae" at Premium Financing who advised him that the policy in fact had not been cancelled.
Paragraph 22 then states that Mr. Matican again contacted "Rae" who advised she's may have been mistaken as to the cancellation but insurance was in effect because a, specific CT Page 5149-B request for reinstatement had been sent to the defendant prior to the loss and "Rae" believed the policy had been reinstated. In the first count the plaintiff alleges negligence on the part of the defendant. He claims the defendant Connecticut Underwriters failed to notify him of the "purported" cancellation in December of 1992, failed to obtain reinstatement of the "purported" cancelled policy even though previously it had done so after a cancellation, failed to proved notice to him, Mr. Matican, or Premium Financing that the policy was not to be reinstated despite the defendants having notice that the plaintiff was current on its premium payments; also the plaintiff claims the defendant Connecticut Underwriters was negligent in placing a policy with a company that did not allow or permit reinstatement and in failing to place the plaintiff's insurance with another company after a "purported" cancellation and failure to reinstate. The plaintiff finally claims that he reasonably relied upon the actions of the defendant "acting as his agent" to reinstate the policy or to inform the plaintiff that reinstatement could not be secured and the defendant was negligent in failing to do this.
In the third count of the revised complaint the first 26 paragraphs of the first count are incorporated and the plaintiff asserts the defendant "had a contractual duty to protect the plaintiff's interests in the property upon which the insurance was placed." Also the plaintiff claims the defendant "had a duty to properly ensure that the policy would remain in force after acceptance of premiums and had a further duty to advise the plaintiff of cancellation and of lack of reinstatement in the event that was not to take place." The plaintiff alleges the defendant breached its duties and as a result he suffered damages.
The defendant claims it is entitled to summary judgment because the facts and the law establish Connecticut Underwriters did not owe the plaintiff any legal duty that it breached. The plaintiff opposes the defendant's motion and has filed a cross motion for summary judgment. It claims the "purported cancellation" of the policy on December 23, 1992 was void because the defendant failed to comply with statutory requirements concerning cancellation. The plaintiff also bases its motion on the argument that return of unearned premiums is a condition precedent to effectuate a valid cancellation. Since the premiums were not returned until four months after the cancellation date which was two months after the loss the cancellation was void and CT Page 5149-C of no effect.
 A.
The standards for determining whether summary judgment should be granted are well-known. A trial court must determine whether an issue of fact exists but cannot try that issue if it does exist, McColl v. Pataky, 160 Conn. 457, 459 (1971). The burden of course is upon the party moving for summary judgment.
Hearsay statements, because they are inadmissible as evidence, are insufficient to support the granting of summary judgment or to contradict facts offered by an opposing party.McColl v. Pataky, supra; Sheridan v. Board of Education, 20 Conn. App. 231,240 (1995). Mere assertions of fact cannot establish the existence of a material fact nor does a bald claim that an issue of fact exists, raise such an issue, Connecticut v. Goggin,208 Conn. 606, 616 (1988); Hammer v. Lumberman's Mutual Co.,214 Conn. 573, 579 (1990).
Admissions by parties can of course be considered by courts in deciding motions for summary judgment. The nature of the admission determines how it may be used in deciding a motion for summary judgment. For example an admission in a deposition is not a judicial admission and can be contradicted by affidavit or trial testimony and under these circumstances is not binding on the trial court or dispositive, cf. Lagava v. Lastrina,9 Conn.L.Rptr. 178 (1993). On the other hand where a party makes an admission in a pleading such as an answer to a complaint it may be a binding judicial admission at least as to the contents of the admission, Vernes, et al v. State Street Mortgage Co., et al,9 Conn.L.Rptr. 113, 115 (1993); cf. Orenstein v. Old BuckinghamCorp., 205 Conn. 572, 576 (1987) (where there were no objections to requests for admissions they were deemed to be admitted).
 B.
Certain basic issues must be resolved in order to decide these interrelated motions for summary judgment. One important matter is the question of cancellation of the policy. If this policy was cancelled before the date of the loss on February 8, 1993 the defendant should prevail. Whether the policy can be said to have been cancelled depends on how several subsidiary questions are answered. The first question to be resolved is whether in fact there was a cancellation in what might be called CT Page 5149-D the purely mechanical sense. In other words did someone with the authority to do so in fact request that this policy be cancelled and pursuant to that request was the policy in fact cancelled. Then the question must be asked whether, even if the policy was cancelled in the above mentioned sense, can it be said that it was cancelled in a legal sense. That is, was any cancellation only a "purported" cancellation in the sense that for some reason in common or statutory law the cancellation should be held to be void and of no effect.
The other important issue is the question of reinstatement. Even if the policy was in fact cancelled was there a request to reinstate the policy made to the defendant prior to the loss? More to the point is such a request was made under the circumstances existing in this case did the policy have to be reinstated?
NEGLIGENCE COUNT
 1.
 a.
The plaintiff concedes, as it must, considering the explicit terms of the agreement it had with Premium Financing, that Premium Financing was authorized to cancel the policy for the plaintiff. It had the power to do so in the event the plaintiff failed to pay loan installments on the premiums paid by Premium Financing to the insurer.
In an affidavit submitted by Henry Stone Jr., President and Treasurer of the defendant, Mr. Stone states that shortly after December 21, 1992 his company received a notice from Premium Financing stating the latter company was exercising its power of attorney to cancel the policy for nonpayment of installments and that it had notified the plaintiff of the cancellation. The notice demanded the policy be cancelled on December 23, 1992. A copy of the notice was attached to the Stone affidavit.
The plaintiff in its brief maintains whether the defendant received a cancellation request "is in dispute." He appears to base this contention on the fact that the cancellation notice is not date stamped. Mr. Stone at his deposition stated that it is customary practice for the defendant company to date stamp incoming documents. In the court's opinion this does not raise a genuine issue of material fact as to whether the document was CT Page 5149-E received either prior to the date of the loss or even prior to December 23, 1992, the date the notice requested cancellation. No affidavit was presented by any representative of Premium Financing that the document was not sent, no claim was made that the cancellation request did not originate from Premium Financing. Mr. Matican offered purely hearsay testimony in his deposition that he talked to some individual named "Rae" at Premium Financing who told him a cancellation request was not sent to the defendant by Premium Financing. Matican noted this conversation was recorded as a "business entry" on January 21, 1993, but "Rae" had no duty to report anything to him. The reason for Matican's call was a premium account request he received from the defendant which in fact referred to cancellation. At some point after this but before the date of the loss Matican again spoke to "Rae" who said she might have been mistaken about the cancellation request but not to worry a request for reinstatement had been sent unto the defendant. (see paragraphs 19 through 22 of revised complaint). The plaintiff further argues that the defendant's position that it received the cancellation notice in question is also belied by the fact that it also makes a "convenient claim" that it did not receive a notice to reinstate the policy. It is difficult to comprehend the thrust of this argument since the fact that a reinstatement notice was prepared to send to the defendant on behalf of the plaintiff indicates in fact there was an awareness of the fact of the cancellation of the policy. The critical point for the defendant to try to establish is that it received a cancellation notice before the date of the loss and the evidence offered by the plaintiff does not contradict this but seems to support it. Another factor relied upon by the plaintiff to argue that the cancellation was not received by the defendant prior to the loss is the fact that the December cancellation notice demanded a prompt premium refund but no refund was made until April — after the date of the loss. But Mr. Matican himself indicated his January call to Premium Financing was brought about by a premium accounting request which referred to cancellation (see paragraph 19 of Revised Complaint). How could a premium refund be made without the preparation of such calculation? Mr. Stone defined "prompt" refund as one occurring within 10 to 40 days but the loss only happened here on February 8, 1993. Thus the fact that no premium refund was received prior to the date of the loss is of no significance from an evidentiary point of view in raising a genuine issue of material fact as to whether the cancellation notice was received on or about December 21, 1992. CT Page 5149-F
In the final analysis the cancellation notice was produced from the defendant's files, this is the purport of Mr. Stone's affidavit and that fact does not appear to be contested. The plaintiff's final position on this point as stated in page 9-10
of his brief is difficult to follow. On the one hand he appears to concede that at some point the cancellation notice was sent by Premium Financing to Connecticut Underwriters but then contends that there is nothing to indicate it was received by the latter company prior to the February 8, 1993 loss. But why would Premium Financing send a cancellation notice requesting cancellation of the policy effective December 23, 1992 on a date calculated to arrive at some unknown date that just happened to be after the loss? The plaintiff's contention that there is a material issue of fact concerning whether the cancellation notice was received by the defendant before the date of the loss is based on speculation and conjecture unsupported by any affidavits or other documents.
 b.
The plaintiff makes a claim in negligence regarding the cancellation of this policy. He claims the defendant as an agent of the insurer breached its duty of care owed to the plaintiff in cancelling this policy. As said in Coburn v. Lenox Homes Inc.,186 Conn. 370, 375 (1982):
 "The existence of a duty of care is an essential element of negligence. . . . A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what . . . (that person) . . . knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act."
The plaintiff argues that since the duty of care was breached due to the defendant's negligence, cancellation of the policy was void and of no effect and he, the plaintiff, suffered damages. The existence of a duty is a question of law, Nolan v. NY, N.H. HR Co., 53 Conn. 461, 471 (1885); it has been said that the law does not recognize a "duty in the air."
 I.
Although the plaintiff seems to take different positions on this point, he does suggest that the defendant owed a duty of CT Page 5149-G care to the plaintiff because it was his agent. The plaintiff has cited the case of Ursini v. Goldman, 118 Conn. 554, 559 (1934) and quotes the following language as applied to so-called insurance brokers; — an insurance broker "must exercise reasonable skill, care, and diligence in effecting the insurance, and any negligence or other breach of duty on (its) part which defeats the insurance which (it) undertakes to secure will render it liable to its principal for the resulting loss." Ursini as indicated refers to so-called brokers whom the case defines as middlemen between insurance companies and the public. What is a broker, who is an agent for whom and under what circumstances can be a complicated question, see Insurance Law Practice, Appelman, Vol. 16, § 8721 et seq. Here, however, it is not so complicated. In paragraph 9 of its revised complaint the plaintiff claims the defendant "after the issuance of the policy . . . was expressly or impliedly authorized to continue to act as agent for the plaintiff." But agency relationships are found when based not on conclusory allegations but on operative facts or presumptions of law created to protect certain classes of people. Factually Mr. Stone's affidavit establishes that the defendant was the agent of Lloyd's, the insurer. The plaintiff offers no facts to rebut this and at page 10 and 11 of its brief the plaintiff even appears to concede the defendant was Lloyd's agent. But this does not settle the issue.
Although the defendant then is an insurance agent of the insurer and not a broker, the law may be said to have created a fictional or operative agency relationship running to the insured from an insurance agent for a limited purpose and a limited duration and that is the context in which the Ursini language must be viewed. Thus Todd v. Malafronte, 3 Conn. App. 16, 22
(1984) applied the above quoted language from Ursini and also set forth in Lewis v. Michigan Millers Mutual Insurance Co.,154 Conn. 660, 664 (1967) (both broker cases) to insurance agents, but only when and for so long as they were procuring insurance for an insured. The initial policy must be procured in a non-negligent manner but that having been accomplished the insurance agent reverts to being the agent of the insurer and is not the agent of the insured. See also § 38a-702 of the General Statutes defining "insurance agents" and "insurance broker".
The defendant, being an agent of the insurer, has no general duty created by any ongoing agency relationship with the plaintiff that would impose a particular standard of care in the defendant in its dealings with the plaintiff as to cancellation CT Page 5149-H reinstatement, or any other matter.
 II.
The plaintiff must look to another source than the obligations imposed by agency law for the creation of the duty of care. In this case the question must be answered as to whether a duty of care has been violated by the defendant surrounding the cancellation of this policy.
The plaintiff claims he received no notice of the cancellation. He thus argues this left him completely unprotected. From his affidavit it is unclear whether he had personal knowledge that a request was made to reinstate his policy after the purported December 1992 cancellation. If he knew of the attempt to reinstate the policy one would have to assume he was aware that it had been cancelled. But let us hypothesize that there is a duty to give notice of cancellation of a policy and the plaintiff had no knowledge of the cancellation. A reasonable company or person could surmise that failure to give such notice would cause the type of harm suffered here by the plaintiff — no coverage for loss.
But the question is that given the fact of cancellation, who had the duty to inform the plaintiff of cancellation. The plaintiff's agreement with Premium Financing gave the later company power of attorney to cancel the policy. True, the certificate of insurance signed by Mr. Stone provides that if the defendant were to initiate cancellation it had to give the plaintiff notice of this. However this creates no duty on the defendant's part regarding notice of cancellation in this case because here cancellation was requested by Premium Financing and the plaintiff gave Premium Financing the power of attorney to make such a request. No statutory duty to give notice is imposed on an insurer or its agent to give notice of cancellation to the insured in this situation. On the contrary, § 38a-170 of the General Statutes imposes the obligation to give such notice on the financing company when it requests cancellation through its power of attorney, compare § 38-324 which imposes notice obligations on the insurer when under certain circumstances it initiates cancellation. The plaintiff makes much of the fact that on a prior occasion the defendant gave notice of cancellation of the policy. But in that situation the plaintiff failed to pay the premium he had agreed to pay. The defendant, acting on behalf of the insurer, decided to cancel the policy (Stone affidavit, CT Page 5149-I paras. 10 through 13 (first affidavit). Since the insurer was initiating the cancellation, the insurer or its agent had an obligation under statute and under the contract of insurance to give, notice of the cancellation, see § 38a-324 and paragraph 3 of the certificate of insurance. But again, here the insurer or its agent did not initiate cancellation — the financing company did and the law imposes the duty of notice of cancellation on the financing company, § 38a-170(a) and (b).
There is a reason to make a distinction between the two situations and between the statutory allocation of the duty to give notice. An insurer that doesn't receive its; premium is immediately aware of it and can and should act to protect its interest while at the same time giving fair warning to the insured. Where an insured has an agreement with a finance company to secure loans to pay the premium a different situation is presented. The power of attorney given to Premium Financing to request that the policy be cancelled is a mechanism created by finance companies and recognized by statute to protect finance companies against insureds who do not meet their financial obligations to finance companies to keep current with loan installments to finance premiums — this has nothing to do with the separate question of whether the premiums owed the insurer are in fact current. Even if such payments are current to the insurer, the Premium Finance Companies must be able to rely on the fact that at their request policies will be cancelled if the insured is delinquent on its loan payment. Insurers and their agents cannot rationally have imposed on them the obligation to police the financial relationships between finance companies and insureds nor should they be held responsible for errors or mistakes made by Premium Financing companies concerning requests for cancellation by those companies. Given these circumstances there is no reason to impose a duty of notice of cancellation on agents of the insurer in addition to the notice of cancellation requirements already imposed on the Premium Financing Companies when such companies initiate cancellation, § 38a-170(b). The premium finance companies have the motive to see to it that cancellation is properly effectuated which entails compliance with the notice requirements of the statute. Stone's affidavit indicates the defendant received a copy of the notice of cancellation from Premium Financing; this notice indicates that Premium Financing notified the insured of the requested cancellation. Having received such a document the defendant would have no reason to think the insured plaintiff had not been so notified; it was in Premium Financing's interests to so notify CT Page 5149-J the plaintiff who had given that company power of attorney to have the policy cancelled. It is difficult to comprehend how the defendant could have violated any duty to care of notification under these circumstances.
Neither is there a claim made here that at the time the notice of cancellation was first sent to the defendant in December 1992 by Premium Financing that the defendant knew or had any way of knowing Premium Financing might have been mistaken in requesting the cancellation or that it based its request on incorrect information. There would be no reason why an insurance agent in the defendant's position would or ought to have such information since the reasons such a financing company might have for requesting a cancellation, as previously discussed, would be based on the status of the account between the insured and Premium Financing. The fact that the premiums to the insurer were current would indicate nothing about such status to the defendant. In fact, pursuant to the statutory scheme, the nature of the agreement between the insured and Premium Financing, and in order to avoid possible legal difficulties with Premium Financing, the defendant had to honor the cancellation request of Premium Financing. What are insurance companies to do, ignore otherwise appropriate cancellation requests from finance companies with power to make such requests and endanger the whole financing structure of their industry?
 III.
The plaintiff alleges other violations of the standard of care regarding cancellation of the policy and as the Coburn case indicates, violation of a statutory standard — here as set forth in § 38a-170 — can form the basis of a violation of a duty of care.
As discussed, the statute provides that notice by the Premium Finance company to the insured is a prerequisite of a valid cancellation.
The other prerequisite to valid cancellation requires compliance with subsection (d) of the statute. That subsection says in relevant part:
 "(d) All statutory, regulatory, and contractual provisions or restrictions providing that the insurer contract may not be cancelled unless notice is given to a governmental agency, CT Page 5149-K mortgagee, or other third party shall apply where cancellation is effected under the provisions of this section."
The argument advanced by the plaintiff is that the defendant's policy cancellation was improper here or void because no notice was sent to the mortgagee. For this later assertion the plaintiff relies on the deposition of Mr. Stone. At page 130 of his deposition Mr. Stone indicates he was not aware that the defendant "sent any notice on behalf of Lloyd's to any mortgage holders under this insurance policy." He was not aware that Lloyd's sent any such notice. That's all there is to establish the underlying assertion but assuming the underlying assertion is established for the purposes of argument and there are in fact mortgages that were not notified of cancellation, what is the effect of a failure to notify under subsection (d)? The plaintiff has not pointed out any "statutory, regulatory, (or) contractual provisions or restrictions" that have not been complied with — noncompliance with which appearing to be a prerequisite to the operation of (d). But the defendant has referred the court to a portion of the standard form policy set out in § 38a-307
of the General Statutes which appears applicable to the policy here, see § 38a-305(8). In § 38a-307 it says:
 "Mortgage interests and obligations. If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgagee a ten day's written notice of cancellation." (emphasis added)
The underlined language indicates that this statutory provision was designed to protect the insurable interest of the mortgagee. I am not aware of any mortgagee making a claim for a loss under this policy. Where the finance company makes a request for cancellation due to, for all the insurer or its agent knows, a default in obligations owed by the insured to the finance company, why should the insured receive a windfall — i.e., continued coverage — where the insurer fails to give notice to a mortgagee, see Szymczak v. Midwest Premium Fin Co.,483 N.E.2d 851, 859 (Oh. 1984); Dunbar National Fire Ins. Co.,561 N.E.2d 450, 453 (Ill., 1990). Both cases deal with notice provisions similar to subsection (d) and in effect hold that failure to give proper notice to third parties does not void the cancellation of the insured's coverage under the policy.
IV.
CT Page 5149-L
The plaintiff also argues that cancellation is void under § 38a-170 because premiums unearned by the insurer were not promptly returned to the plaintiff.
Premium Financing requested that the premiums the plaintiff was entitled to upon cancellation be returned to the plaintiff in its December request for cancellation. The premiums were not returned to the plaintiff until some four months after this request and until at least two months after the loss. The plaintiff appears to claim this constituted a violation of a duty the defendant owed the plaintiff imposed by statute and case law.
The relevant statutory subsection reads as follows:
 "(e) Whenever an insurance contract is cancelled in accordance with the provisions of this section, the insurer shall return whatever gross unearned premiums are due under the insurance contract to the insurance premium finance company effecting the cancellation for crediting to the account of the insured." (emphasis added)
Compliance with subsection (e) by its very terms is not a prerequisite to the fact of cancellation as the above emphasized language makes clear. In any event unearned premiums are returned to the Premium Finance Company not the insured. The whole thrust of the statute is to protect the interests of the finance companies.
If the insurer doesn't return the unearned premiums to the finance company and the insured does not receive the unearned premiums it is entitled to, the finance company may have a right of action against the insurer and can rely perhaps on the statutory language of subsection (e), but the statutory language itself doesn't explicitly create a right of action in the insured against the insurer.
True, if the insurer does not return the premiums the insured is entitled to after cancellation, the insured may have a cause of action for the return of unearned premiums. But that right is not created by the terms of § 38a-170(e) but exists apart from it. It is therefore difficult to see how subsection (d) can be said to provide a standard of care governing the relationship between the insured and the insurer as to the mode, manner, and propriety of cancellation. CT Page 5149-M
Besides, the insurer under subsection (e) not the insurer's agent, has the obligation to return unearned premiums. How can this obligation of the insurer be turned into the creation of a cause of action against the insurer's agent because of its cancellation of the policy which under any scenario would antedate the date on which the unearned premium would have to be returned to the finance company?
The plaintiff relies heavily on Bessette v. Fidelity Casualty Co., 111 Conn. 549 (1930), which held that under the provisions of the insurance policy in that case, cancellation could only be made if the payment of the unearned premium to the insured were made by the insurer on or before the date set for cancellation of the policy. But the court in Bessette explicitly said: "We are not, however, required at this time to determine the construction of the cancellation clause in the standard fire insurance company policy because the policy before us differs radically from that policy in its; terms." 111 Conn. at p. 553. In other words, the court was interpreting the particular language of the policy before it so that its analysis has no precedential value for this case. The court at page 554 went on to say, interestingly enough, that: "This policy does not present a situation where it might be impossible to determine the amount of premium until the cancellation of the risk or where that determination might reasonably be subject to delay." A cursory reading of subsection (c) and (e) of § 38a-170 indicates that given the cancellation mechanism initiated by the premium finance company, cancellation would occur before any premiums could be returned. In fact as previously noted the statute contemplates that return of unearned premiums is a post-cancellation event.
Section 38a-170(e) does not even set a time limit within which unearned premiums have to be returned. The plaintiff says in its brief that Mr. Stone testified at a deposition that a prompt refund of premiums could be anywhere from 10 to 40 days. But the 10 to 40 days Mr. Stone was discussing ran from the date an endorsement was issued reflecting the cancellation of the policy. Here the endorsement was mailed on January 27, 1993 (second Stone affidavit). The 10 to 40 day period from that date would place the February 8, 1993 date of loss well within the period when premiums are customarily returned. Neither does the language of the endorsement support any notion that the defendant itself recognized no cancellation would occur prior to the return of any premiums. The endorsement specifically says "This CT Page 5149-N endorsement effective on 23 December 1992" — that is the date of cancellation and the benchmark for determining the amount of premiums the insured is entitled to by way of refund given the cancellation date. This is also reflected in the language of the endorsement to the effect that the policy is "cancelled pro rata." This is consistent with the invoice attached as Exhibit B to the second Stone affidavit.
This is the explanation Mr. Stone's second affidavit gives to these documents and that explanation is not rebutted by any counter-affidavits, documents or deposition testimony. Besides, since the plaintiff denies being aware of any cancellation neither can he resort to the language of these documents to establish a detrimental reliance claim.
The plaintiff has also made waiver and estoppel arguments but they are not explicitly set forth by reference to case law. The court will not address the portions of the plaintiff's brief making the claim since throughout this decision the court has tried to address arguments that might raise a waiver and/or estoppel claim. In any event the court agrees with the defendant that Connecticut Underwriters has not been shown by affidavit or other documentation to have provided the plaintiff with incorrect information about the cancellation of the policy nor did it do anything to suggest the policy had not been cancelled.[1]
For all of the above reasons the court concludes as a matter of law that there was no violation of any standard of care by the defendant in regard to the policy cancellation since the plaintiff has failed to establish the requisite violation of any duty owed by the defendant to the plaintiff on the facts of this case.
2.
Assuming there was a cancellation, the plaintiff also maintains the defendant was negligent in failing to respond to the request for reinstatement of the policy prior to the loss. To advance this argument the plaintiff must establish that such a request was sent to the defendant and arrived at its office before the date of loss. Attached to its brief as Exhibit 17 the plaintiff has brought to the court's attention a document entitled "Notice of Insured's Request for Reinstatement". The document has "Premium Financing Specialists Inc." on the heading and at the bottom of the document under "to the insurer" it CT Page 5149-O acknowledges Premium Financing cancelled the policy on the cancellation date indicated which is December 23, 1992. The document also gives the mailing date as January 11, 1992 and states the date delinquency payments were received was January 11, 1992.
Mr. Stone in an affidavit claims he never received this document until some two weeks after the date of the loss. Under our law proof of mailing a letter to a party at the correct address with correct postage creates a presumption that the letter was received by the addressee, Garland v. Gaines, 73 Conn. 602,664 (1901); Pitts v. Hartford Life Annuity Ins. Co.,66 Conn. 376, 384 (1995). Such a presumption can be rebutted by substantial countervailing evidence — for example evidence such as that given by Mr. Stone that the letter was not received. Then the legal effect of the presumption disappears but receipt may still be found based on all fair inferences that can be drawn from the evidence, O'Dea v. Amodeo, 118 Conn. 58, 61-62 (1934), see Connecticut Evidence, Tait LaPlante, § 5.2.2, § 5.56. None of this authority permits, however, a court to conclude from the face of any letter or any communication alone when it was actually mailed or when it was received by the addressee.
Here no evidence has been submitted by Premium Financing or any of its agents as to when the document was mailed and thus the court cannot speculate from the face of the document when it might have been received. The plaintiff cannot resort to speculation and conjecture, to counter a sworn affidavit. The plaintiff suggests the defendant's position is just too convenient because in another context the defendant asks the court to accept that it received a notice of cancellation on December 21, 1992 based on Mr. Stone's "bare assertion" to this effect. And so, the argument goes, the court need only look at the notice of request to reinstate to determine it was mailed January 11, 1993, almost a month before the loss. The "bare assertions" of Mr. Stone are in fact incorporated in a sworn affidavit. As to the notice requesting reinstatement, as previously indicated, there has not been any evidence presented to establish its mailing date and date of reception as any earlier than the February 22nd date sworn to by Mr. Stone.
In the court's view the foregoing discussion would preclude a claim that the defendant was negligent in failing to act on a request for reinstatement since there is no credible evidence CT Page 5149-P such a request was received by the defendant prior to the date of loss.
But let us assume that the reinstatement could be said to have been received prior to the date of loss, was the defendant negligent in failing to act upon the request?
The general rule is that: "Where a policy has been forfeited by non-payment of premium, a reinstatement can be effected only by an application therefore and acceptance by the insurer", Couchon Insurance, 2d, § 69:19, p. 717; Exchange Trust Co. v.Capitol Life Ins. Co., 49 F.2d 133, 136 (CA 10, 1931). Here there are no specific policy clauses governing reinstatement and how it may be effected, cf. Interstate Life Accident Ins. Co. v. Reid,192 S.E. 245, 246 (Ga., 1937). Also there does not appear to have been a default of premiums but a representation by Premium Financing inherent in its request for cancellation that the plaintiff was in default on his loan installments to that company which financed his premium payments. This would appear to be a distinction without a difference insofar as the application of the rule to the effect that upon default of premium a reinstatement can be effected only where there is an application and acceptance by the insurer. The insurer would have just as much interest in protecting itself where a premium is not directly paid as in protecting itself where the finance company that pays the premium through a loan arrangement with the insured in effect tells the insurer or its agent that the insured hasn't been keeping up with his loan installments to the finance company.
Given the fact that under the circumstances of the cancellation here a reinstatement can be effected only by a new application for insurance and acceptance by the insurer, ordinary principles of contract law govern. Thus in Swentusky v.Prudential Ins. Co., 116 Conn. 526, 533-534 (1933) the court makes the following statement which in this court's opinion precludes the claim of negligence made here:
 "It is a thoroughly established principle of the law of contracts, within the field of which insurance largely lies, that ordinarily a bare offer imposes no liability upon the person to whom it is made until it is accepted; he need make no reply to it at all, and if he fails to do so for any reason, because he does not propose to accept it, or because he has forgotten it, or under other circumstances, the only result the law CT Page 5149-Q recognizes is that no contract comes into existence. 1 Williston, Contracts, § 91; 1 Page, Contracts, § 150. To impose upon one to whom an offer is made a duty to exercise reasonable care in dealing with it, both as to manner and time, would run counter to this established principle and, unless the principle is to be greatly modified, it furnishes a limitation upon the operation of the broad doctrine of negligence which might possibly otherwise apply. The bare making of an offer cannot afford a basis for any liability by reason of delay in accepting it or the want of care in dealing with it."
An exception to this principle which the cases recognize is a situation where for example an insurance agent of the insurer takes affirmative steps to aid an insured in securing reinstatement of the policy. Under those circumstances the agent would become the agent of the insured and would be held liable in negligence for failure to exercise reasonable care in effectuating the reinstatement. Thus in Mount Vernon Fire Ins.Co. v. Rushford Center Inc., 1 Conn. Opp. 1236, 1237 (D.C. Conn., 1995) the court held an insurance agent, Lawson, could be held liable to an insured seeking reinstatement of its policy:
 "For the reasons stated above and fact that Lawson communicated, on behalf of Rushford, with Mount Vernon in order to secure liability insurance retroactive to the date that the policy lapsed and also instructed Rushford extensively as to how to fill out the necessary paperwork, the Court concludes that Lawson continued as Rushford's agent in its efforts to secure liability insurance retroactive to the lapse of the policy. See Teleco Oilfield Services, Inc., 656 F. Supp. at 756-57. As such, Lawson continued to owe a duty to Rushford to exercise reasonable skill, care and diligence in accurately completing an forwarding the necessary documents, including the renewal application and the no-loss letter, to effect retroactive liability insurance coverage. See Ursini, 118 Conn. at 559."
The citation to Ursini v. Goldman, 118 Conn. 554 (1934) is instructive since the Mount Vernon court equates the reinstatement of cancelled insurance request to the actions of an insurance broker in trying to procure a policy in the first place. In the latter situation also the insurance broker becomes an agent of the policy applicant when the broker actually negotiates for the policy and the applicant relies on the brokers CT Page 5149-R care and diligence in securing the desired policy.
Morlte v. Certified Lloyds, 569 So.2d 1120 (La., 1990) andAuger v. Gionti Agency, 527 A.2d 928 (NJ, 1987) do not conflict with the reasoning of Mount Vernon and Swentusky.
In Morlte the court held that an insurer was estopped from denying coverage on an automobile policy. The court's opinion is somewhat confusing but at 569 So.2d page 1124 appeared to base its holding on the fact that the insured reasonably believed he was insured because a policy was in fact issued to him despite his failure to submit a no loss statement after his binder was cancelled and after he had requested reinstatement. The court noted also his premium was not returned within sixty days under a statutory scheme which specifically required unearned premiums to be returned no later than sixty days after cancellation but appeared not to in the end base its decision on that factor since it noted the insurer gave a reason why the premiums were not returned. Then the court went on to hold that the insurer could not deny coverage because the insured, Morlte, detrimentally relied on the fact that the insurer had mailed a reinstated policy to him.[2]
In Augur a premium finance company had the plaintiff's policy cancelled because her agent was dilatory in making sure her premium payment got to the company's office prior to the cancellation date. The finance company received the payment the day after the cancellation date and sent a request for reinstatement to the insurer. The request said that if the insurer decided not to reinstate "kindly send us your remittance for the gross unearned premium and please advise the insured immediatelyof the status of this policy:" (emphasis in the original). Copies of the request form were sent to the insurance agent and to the insured. The insured sued the insurance agent and the insurer. The appeal was really from the trial court's granting of a motion for summary judgment in favor of the insurer against the insurance agent. The court held summary judgment was improperly granted since the agent testified reinstatement was expected pursuant to industry standards. The court held a factual issue existed as to the timeliness of the insurer's decision and notice not to reinstate. The court said "this is particularly true" (whatever that means) because the insurer learned through the premium finance company that payment was received, that reinstatement was requested, and that the plaintiff was not endeavoring to get insurance with another company. What all this has to do with the CT Page 5149-S propriety of a claim by the insured against the insurer or an agent of the insurer is not clear. However, if the plaintiff's affidavit in this case is read closely he never claims he received a copy of the request for reinstatement let alone that he knew his policy was about to be, was, and remained cancelled for any period of time prior to the date of loss. At page 28 of its brief the plaintiff appears to confuse allegation of his complaint with facts established by way of affidavit or documentation in summary judgment procedure.
Thus here it can be said that nothing has been offered to indicate that regarding the request for reinstatement of the policy the defendant took any affirmative steps concerning that request which would in effect make it an agent of the plaintiff for the purpose of seeking reinstatement nor can it be said that the plaintiff detrimentally relied on the fact that reinstatement of the policy would be forthcoming.
Also silence as such by the defendant cannot be regarded as acceptance since any failure to act on the request for reinstatement cannot have lead the plaintiff to believe the request for reinstatement would be accepted. John BrennanConstruction Corp. v. Shelton, 187 Conn. 695, 710 (1982). This is really in accord with the previously quoted language fromSwentusky at pp. 533-534.
In an attempt to avoid the thrust of Swentusky the plaintiff appears to argue that it was the defendant's "custom" to reinstate insurance after cancellation or "at the very minimum respond to a request for reinstatement, (plaintiff's brief, page 37). However, the deposition of the plaintiff's agent, Mr. Matican, is referred to but only selectively. At the bottom of page 13 of the deposition he says if he did not hear from the insurer's agent regarding a request for reinstatement within a few days he'd call up and find out, he'd do that to make sure the insured had coverage. Nothing presented by Matican or anyone else establishes any on standard policy in this industry requiring response to requests for reinstatement. The case law reviewed in fact suggests otherwise. Similarly even if the defendant has in the past or could offer policies providing for reinstatement after cancellation nothing in the law would require a company to do so absent a finding of detrimental reliance or an affirmative undertaking on the part of the insurer's agent to seek reinstatement of a policy. Therefore even if I were to have found the notice of request for reinstatement was received by the CT Page 5149-T defendant, which I do not, I still believe that the plaintiff cannot establish a negligence claim based on the actions or failure to act by the defendant on the request for reinstatement. How can I find the mere forwarding of the request for reinstatement by Premium Financing to the defendant created a duty on the defendant's part to reinstate the policy or notify the plaintiff even though the notice says reinstatement was desired by the insured. There can be no detrimental reliance because Mr. Matican in his deposition denied receiving a copy of the reinstatement request before the date of loss and there is nothing to indicate the plaintiff did so.
For the foregoing reasons the first count alleging negligence against the defendant is dismissed since summary judgment on that count is granted by the court.
Contract Claim
In the third count of the revised complaint the plaintiff claims a violation of contractual duty on the part of the defendant Connecticut Underwriters. The plaintiff incorporates the first twenty six paragraphs of the first count, the negligence count, into the third count and also adds two substantive allegations in paragraphs 27 and 28. Paragraph 27 asserts the defendant Connecticut Underwriters had a duty to protect the plaintiff's interests in the property upon which the Insurance was placed. In paragraph 28 the plaintiff asserts the defendant had a duty to properly ensure that the policy would remain in force after acceptance of premiums, had a further duty to advise the plaintiff of cancellation and a "lack of reinstatement in the event that was not to take place." (Para. 28).
The plaintiff appears to be basing its contract claim on a theory of implied or quasi-contract.
 "An implied contract is an agreement between the parties which is not expressed in words but which is inferred from the acts and conduct of the parties . . . the test is whether the conduct and acts of the parties show an agreement. . . . In distinction to an implied contract, a quasi contract is not a contract, but an obligation which the law creates out of the circumstances present, even though a party did not assume the obligation, and may not have intended but in fact actually dissented from it. . . . It is based on equitable principles to CT Page 5149-U operate whenever justice requires compensation to be made," Brighenti v. New Britain Shirt Corp., 167 Conn. 403, 406-407
(1974), cf. Therrien v. Safeguard Mfg. Co., 180 Conn. 91, 94-95 (1980).
There is no evidence presented to indicate there was a violation of an express contract between plaintiff and defendant to perform any of the duties which plaintiff now claims the defendant was obligated to perform in his interest — duty not to cancel, duty to act as plaintiff's agent beyond point at which policy initially secured, duty to notify that policy would not be reinstated. In effect the plaintiff relies on the same position set forth in the negligence claim to the effect that the defendant violated certain duties owed to the plaintiff by the nature of their relationship, past dealings and statutory imposition of duties to support his contention in the contract count that in fact those duties imported by law into their business relationship were violated by the defendant.
The court has already decided adversely to the plaintiff the claim made in the negligence count that the defendant violated various duties purportedly owed to the plaintiff. The nature of the "contract" claim here, relying as it does on a purported violation of those very same duties requires the court to grant summary judgment in the defendant's favor on the contract claim.
The court grants the defendant's motion for summary judgment as to the first and third count and therefore also denies the plaintiff's cross motion for summary judgment.
Corradino, J.